Lois HAMPTON et al., Appellants,

v.

Phillip S. NIX et al., Appellees.

No. 6814.

Court of Civil Appeals of Texas.

Texarkana.

June 9, 1955.

Hardy & Clapp, Tyler, for appellant.

Ben Goodwin, Tyler, for appellee.

FANNING, Justice.

This is a trespass to try title suit involving 82 acres of land in Smith County, Texas, and also for damages to timber cut from and growing on said land, which suit was brought by Phillip S. Nix and Sybil Nix against William Hampton and wife, Adeline Hampton, E. D. Dillard and Lois Hampton and wife, Fayrene Hampton.

The defendants William Hampton and wife, Adeline Hampton, filed a written disclaimer to the property. Defendants Lois Hampton and wife, Fayrene Hampton, pleaded and sought to prove title under the 10-year statute of limitation. The defendant Dillard, in his answer, among other things pleaded that he purchased by timber deed from Lois Hampton and Fayrene Hampton the growing timber on the land in question in reliance upon the limitation title of said Hamptons and that he was an innocent purchaser for value, etc.

The case was tried to the court without a jury under the stipulation that the record title to the property in question stood in the Nixes subject to being defeated by limitation.

The court rendered judgment in favor of Phillip S. Nix and Sybil Nix against all the defendants for title and possession of the land in question and for damages to timber in the amount of $125 against the

defendants' Lois Hampton and wife, Fayrene Hampton, and E. D. Dillard. Lois Hampton and wife, Fayrene Hampton, and E. D. Dillard have appealed.

The trial court filed findings of fact and conclusion of law as follows:

"Findings of Fact

"I

"That it was stipulated between the plaintiffs and the defendants that record title was in the plaintiffs, Phillip S. Nix and Sybil Nix.

"II

"The defendants pled the ten-year statute of limitation, which they failed to establish, in that neither of them had peaceful and adverse possession of the lands and tenements for a period of ten years next preceding the filing of this suit.

"III

"The Court finds that the lands described were not enclosed by fences.

"IV

"The Court finds that the defendants cut and removed from the land timber of the value of $125.00."

"Conclusions of Law

"I

"That legal record title was in the plaintiffs, Phillip S. Nix and Sybil Nix.

"II

"That the defendants failed to establish any limitation title.

"III

"That timber of the value of $125.00 had been cut from the land by defendants or at their instance.

"IV

"That the plaintiffs, Phillip S. Nix and Sybil Nix, are entitled to judgment for title and possession to the land, and for damage to timber cut therefrom in the sum of $125.00."

Appellants by their points 3, 4 and 5 contend that the trial court erred in finding that appellants had not had peaceable and adverse possession of the land in question for a period of 10 years next preceding the filing of the suit, in finding that the lands in controversy were not enclosed by fences, and in finding that appellants had failed to establish any limitation title. Appellants' points 7, 8, 9, 11, 12, 13 and 14 complain of the admission of alleged hearsay evidence.

The evidence in this case with reference to limitation and adverse possession was highly conflicting. This suit was filed on April 27, 1954. Appellants Lois Hampton and wife, Fayrene Hampton, testified to the effect that they moved upon the 82-acre tract in controversy in the fall of 1941, and had remained there continuously each and every year since and to the date of the trial (October 4, 1954), claiming the premises openly and adversely, etc., planting crops on 15 to 20 acres of the land, running cattle thereon, with a fence around the entire tract of said land capable of turning cattle, etc. Esau Hampton and Jesse Hampton testified to matters tending to support the limitation claim as did Samuel Maroney and the defendant E. D. Dillard.

However, the testimony of appellants and their witnesses with respect to the limitation claim was vigorously contested by appellees who produced several witnesses whose testimony sharply disputes the limitation claim.

The witness Ray testified that he moved on the land in question in November 1942, and that he lived there (and in the house on the land) until the latter part of 1943, and paid rent to Mr. Nix. He also testified that Harlon Geyser lived on the land and in the house on the land (the same house that Lois Hampton had claimed he was living in on the same date) about two years. The witness Geyser testified that he moved on the premises in question in 1944, and lived there through 1945, that he worked the tract and paid rent on it to Mr. Nix. The

witness Eli Nix testified that in 1947 he collected rent, corn, potatoes and bundled sorghum from the appellant Lois Hampton from products raised on the place in question. The witness H. B. Curtis, executor of the estate of Mrs. Lela Nix, deceased, testified that in the year 1950, he rented the land in question to Lois Hampton for the following year (1951) on the basis of a third of the corn and a fourth of the cotton. The witness Reuben Orr testified that Harlon Geyser lived on the premises in question in 1944 and 1945 and that the land was vacant for at least part of the year 1946. The witness Chilton Wells, a rural mail carrier, testified that Harlon Geyser lived on the premises in the year 1945 and that Ray lived there in 1943. The witnesses Whiteside and Killion also testified that Geyser lived on the premises in question in 1945, and other things. There was also other testimony to the effect that Lois Hampton and wife, Fayrene Hampton, did not live on or have possession of the property in question during the years 1943, 1944, 1945 and part of 1946.

Appellees' witnesses Ray, Killion, Whiteside and Curtis also testified as to the lack of fences around the premises in question during the 10 years next preceding the filing of the suit in 1954. The evidence with respect to fences was disputed and sharply conflicting between the parties.

We quote from 3B Tex.Jur., as follows:

"It is for the trier of the facts, whether the court or the jury, to decide the issues of fact on conflicting evidence, or evidence which is susceptible of diverse influences. So the rule is well established that a reviewing court will not disturb the jury's verdict or findings where there is some evidence of probative value to support them, unless the evidence is so overwhelmingly against the verdict or findings as to shock the conscience or show clearly that the conclusion reached was wrong or was the result of passion, prejudice or improper motive." Page 449. * *

"It is not the prerogative of the appellate court to pass upon the weight of the testimony nor to determine in whose favor it predominates. The only question for the court's determination is whether or not there is any testimony of probative effect to support the findings." Page 453. * * *

"On review of a judgment in a case tried by the court without a jury, it is presumed that the court did not consider any improper evidence if such was heard, and that the court considered evidence for the purpose only for which it was offered." Page 352.

█ In a trial by the court without a jury it will be presumed that the court was not influenced by improper evidence submitted, there having been sufficient competent evidence to support the verdict. Bates v. Stinnett, Tex.Civ.App., 170 S.W.2d 644; Wilcox v. Dillard, Tex.Civ.App., 3 S.W.2d 507, error ref.

█ There was ample competent testimony in the record to support the findings of the trial court complained of above and we think these findings are strongly supported by competent testimony. While perhaps some of the alleged hearsay testimony may have been inadmissible on that score, we deem it unnecessary to discuss same here as we are of the opinion that same does not present reversible error under this record. Appellants' points 3, 4, 5, 7, 8, 9, 11, 12, 13 and 14 are respectfully overruled.

█ Appellants by their points 1 and 2 contend that the trial court erred in awarding damages to appellees against appellants.

In 28 Tex.Jur., p. 366, it is stated:

"The owner of land upon which growing trees have been destroyed by the act of another may either sue to recover damage for the injury to his land caused by the loss of trees, or bring an action for the value of the trees."

The appellant Dillard testified that he took a timber deed from William Hampton but did not act on that deed but that "I acted on the deed that Lois (Hampton) gave me."

(The Lois Hampton timber deed was given in the early part of 1954 and covered the timber on the land in controversy.) We quote from the further testimony of Mr. Dillard as follows:

"A. Well, I couldn't get any hands to go out there and cut the timber, and I told this fellow, Scott, that he could go out there and cut the timber and keep an account of it. And he told me he would give $10.00 a thousand for what timber he cut out there.

"Q. How much has he cut, or rather I will put it this way, how much has he brought in and paid you? A. He has brought in between $30.00 and $40.00.

"Q. Did you get the money? A. I gave it to Loïs' brother to keep for him.

"Q. That's Horace, I guess? A. Yes.

"Q. And you don't know what he has done? A. No, I don't. I don't know whether he didn't cut that much or more. He told me he hauled everything he cut.

"Q. This man, whatever his name is now, Scott, told you that he had hauled away such timbers as he had cut? A. Yeah.

"Q. And he has turned in to you or to Horace between $30.00 and $40.00? A. Yes.

"Q. None of that came to you? A. No, I didn't get a dime of that.

"Q. And you don't know what disposition, or tell the Court whether you know what disposition Horace made of the money? A. No, I don't.

"Q. You haven't gone out there and counted the stumps? A. No, sir. I haven't been on that piece of ground since they started cutting.

"Q. From the best of your information that came to you, about how long did the man cut out there? A. Not over three days, to the best of my knowledge.

"Q. Did you know what kind of a crew he had cutting out there? A. No, sir, I don't. I don't know what he used."

Carson Lovelady, a witness for appellants, testified that Scott employed him to haul logs off the premises in question in the early part of 1954, and he further testified that he carried off of said premises 3250-odd feet of pine timber and 171 feet of oak, and produced written tickets or slips to that effect which were introduced in evidence by appellants. There was also other testimony in the record to show the connection of appellants with the cutting of the timber in question in the early part of 1954.

Appellee, Mr. Nix, after qualifying himself to testify, stated that he estimated that 10,075 board feet of pine timber were cut off one acre of the land, and he further estimated that more than a million board feet of pine timber was cut from the premises, with the reasonable cash market value of the pine timber being $30 to $35 a thousand (board feet), at the place where it was cut and in said county at the time the timber was cut; and oak being of the reasonable cash market value of $20 per thousand (board feet) at the place where it was cut and in said county at the time of the cutting of it, and that the other trees were also damaged to the extent of $1,000.00.

Defendants Lois Hampton and wife, Fayrene Hampton, in their answer specifically admitted that a small amount of timber had been cut from the land, growing out of their sale by timber deed (to Dillard) and that "the total amount of timber so cut and removed from said land does not exceed in value the sum of $200." The trial court, however, only awarded $125 as damages.

We find that there was ample testimony to support the trial court's finding on damages. Appellants' first and second points are respectfully overruled.

We have carefully considered appellants' remaining points and respectfully overrule same.

The judgment of the trial court is affirmed.