GORGONIO VILLAREAL AND PRAXEDIS VILLAREAL v. THE STATE.

No. 3838.     Decided December 1, 1915.

Rehearing denied as to one appellant December 22, 1915.

**1.—Murder—Insufficiency of the Evidence as to One Appellant.**

Where, upon trial of murder, the evidence was insufficient to sustain a conviction as to one of the defendants, the judgment is reversed and the cause remanded as to him, and affirmed as to the other appellant.

**2.—Same—Principals—Rule Stated.**

The mere presence at the time and place of the homicide will not in and of itself alone constitute one a principal offender; this is a circumstance, but there must be other facts and circumstances tending to show that he aided by acts or encouraged by words or gestures the person who actually committed the homicide before a conviction can be sustained. Following Burrell v. State, 18 Texas, 713, and other cases.

**3.—Same—Accessory—Father and Son—Principal.**

Under article 87 of the Penal Code it is provided that the father, by concealing the facts that his son has committed a crime, is not guilty as an

accessory, and he could not be convicted as a principal offender unless it was shown either by direct or circumstantial evidence that he was guilty of some overt act or conduct prior to or at the time of the homicide, and where the facts showed at the most that perhaps he was present and witnessed the homicide and afterwards concealed this fact of which his son might be guilty, he could not be convicted as a principal.

**4.—Same—Principal—Motive—Sufficiency of the Evidence.**

Where, upon trial of murder, against father and son, the evidence was insufficient to convict the father as a principal or an accessory, but the evidence showed motive on the part of the son and that he was connected by direct and circumstantial evidence in the commission of the offense, the conviction was sustained as to the son. Davidson, Judge, dissenting.

**5.—Same—Impeaching Witness—Cross-examination.**

Where the court permitted a sufficiently broad scope in the cross-examination and impeachment of certain State's witnesses, there was no error committed in sustaining objections to the questions propounded by the defendant; besides, the bills of exception were incomplete and defective.

**6.—Same—Bills of Exception.**

Where the bills of exception did not show the answers to the questions propounded to the witness, they could not be considered on appeal; besides, if considered, there was no reversible error.

**7.—Same—Evidence—Credibility of Witness.**

Where the defendant testified, there was no error on cross-examination by the State to show that he was under indictment for theft of a horse.

**8.—Same—Misconduct of Jury—Impeaching Verdict.**

A juryman will not be permitted to impeach his verdict after being discharged and permitted to mingle with the outside world, and who voted guilty by ballot and when the jury was polled, to testify by affidavit or otherwise that he convicted defendants because he believed that they could secure a pardon, although he did not believe the defendants to be guilty. Following Johnson v. State, 27 Texas, 758, and other cases. Davidson, Judge, dissenting.

Appeal from the District Court of Kleberg. Tried below before the Hon. W. B. Hopkins.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Pope & Sutherland,* for appellants.—On question of cross-examination of State's witnesses: Blunt v. State, 9 Texas Crim. App., 235; Green v. State, 54 Texas Crim. Rep., 7; Earles v. State, 64 Texas Crim. Rep., 537, 142 S. W. Rep., 1181; Christian v. State, 71 Texas Crim. Rep., 566, 161 S. W. Rep., 101; Burge v. State, 73 Texas Crim. Rep., 505, 167 S. W. Rep., 63; Curry v. State, 72 Texas Crim. Rep., 463, 162 S. W. Rep., 851.

On question that leading and suggestive questions are inadmissible on direct examination: West v. State, 2 Texas Crim. App., 460; Ripley v. State, 51 Texas Crim. Rep., 126; Goodsoe v. State, 52 id., 626; Garrett v. State, 52 id., 255.

On question of reasonable doubt: Trejo v. State, 45 Texas Crim. Rep., 127.

On question of misconduct of jury: Hunter v. State, 8 Texas Crim. App., 75; Anchicks v. State, 6 id., 524; Jack v. State, 20 id., 656; Testard v. State, 26 id., 260; Kelly v. State, 28 id., 120.

On question of insufficiency of the evidence: Clark v. State, 30 Texas, 448; Hardin v. State, 13 Texas Crim. App., 192.

*C. C. McDonald*, Assistant Attorney General, for the State.—On question of bill of exceptions: Barbee v. State, 58 Texas Crim. Rep., 129; Welch v. State, 57 id., 111; Lax v. State, 46 id., 629.

HARPER, JUDGE.—Both appellants were convicted of murder, and their punishment assessed at five years confinement in the penitentiary each.

The most serious question in the case is the one contending that the evidence is insufficient to sustain the conviction, and as to the defendant Praxedis Villareal we think such contention must be sustained. Mere presence at the time and place of the homicide will not in and of itself alone constitute one a principal offender. Such presence is a circumstance tending to support a finding that one is a principal, but there must be other facts and circumstances in evidence tending to show that one aided by acts or encouraged by words or gestures the person who actually committed the unlawful act, before a conviction can be sustained. (Art. 75, P. C.; Burrell v. State, 18 Texas, 713; Golden v. State, 18 Texas Crim. App., 637; Noftsinger v. State, 7 Texas Crim. App., 301; Alford v. State, 31 Texas Crim. Rep., 299.) In this case the most the evidence would tend to show is that Praxedis Villareal may have been present when his son, Gorgonio Villareal, fired the fatal shot, if he shot James Rowland, but all the evidence, both for the State and for the defendants, would show the most kindly and friendly relations existing between deceased and defendant Praxedis Villareal, and would exclude the idea that he for any reason would participate in the murder. All the State can insist that the evidence would suggest is, that perhaps he was present and witnessed the homicide, afterwards concealing the fact that his son, Gorgonio, had shot Rowland.

By article 87 it is provided that a father, by concealing the fact that his son has committed a crime, is not guilty as an accessory. To make one a principal offender he must be shown by circumstantial evidence or otherwise to have been guilty of some overt act or conduct prior to or at the time of the homicide. As to Gorgonio Villareal, the record presents a wholly different case. By the witnesses Refugia Rodriguez, Toribia Ortiz and Mariana Guzman it is shown that Gorgonio Villareal not only desired the death of deceased, but besought Refugia Rodriguez and Mariana Guzman to obtain poison for him, offering to pay them $25 to do so, in order that he might have it administered to Rowland. All three of the witnesses testify to a state of facts that would show that appellant Gorgonio Villareal was intimate with the wife of de-

ceased, and desired to have him killed that he might secure his wife. A sufficient motive is shown by the State's testimony for him to have committed the crime, and that he had it in contemplation. Appellants' own witnesses testify that ill-will existed, but they place it on a different ground. They say that Gorgonio formerly was a frequent visitor at the home of James Rowland, but that Rowland had stopped him from coming to his home. They gave as a reason for this that a mule or a horse had been stolen from Rowland, and he believed that appellant, with another, had stolen the animal, and for this reason had stopped appellant from coming to his home. Appellant Gorgonio says he had not been at Rowland's home for some months. However, a State's witness, Annie Rowland, testifies to seeing him at her father's home on two occasions shortly before the homicide, when her father was not at home. Lawrence Morris testifies that he was staying at the home of appellants, and that on Wednesday before the homicide occurred on Sunday, that Gorgonio in a conversation with him said that he wanted to get Jim Rowland out of the way so that he could have Rowland's wife. Morris was a cousin of Gorgonio by marriage, and detailed the conversation, but the above is the substance of it. He also says that on the day of the homicide Gorgonio told him he was going to Ricardo (the home of Jim Rowland) and get deceased out of the way. That he saw Gorgonio when he left home and that he went in a buggy, and carried with him his Winchester rifle—a .44 caliber rifle. Morris says Jesus Gallardo was horseback and went along with Gorgonio. On Monday morning he had a conversation with Gorgonio, in the presence of Gallardo, and that Gorgonio told him he had gone to Ricardo and got Jim Rowland out of the way. The other testimony shows that Jim Rowland on that Sunday night had been killed, being shot with a rifle ball of .44 caliber. Morris testifies that appellant drove off in a buggy, and this buggy was by the sheriff traced into the yard of deceased, and back to appellant's home.

Appellant by his testimony seeks to explain why the buggy was sent to Rowland's home. He denies driving it, and says that Gallardo drove it after his father, Praxedis Villareal, and he is supported in this testimony by his father, mother and other witnesses. He also testifies that State's witness Morris had borrowed his .44 caliber Winchester rifle, and had it in his, Morris' possession on the Sunday that Rowland was killed. In this he is supported by the testimony of his mother and other relatives. The jury evidently accepted the testimony of Morris, and did not believe the alibi testimony of appellant Gorgonio, and the explanation of why the buggy was driven to Rowland's home, and did not believe that Morris was in possession of the rifle on that Sunday night, and while Lawrence Morris' reputation for truth and veracity was severely assailed, and he was contradicted by appellants' witnesses, are we authorized to hold that such evidence is unworthy of belief, when the jury who tried appellant Gorgonio and the district judge who presided at the trial evidently thought it worthy of credence? If the testimony of Lawrence Morris is true, with the other facts and

circumstances in evidence, the testimony authorized the conviction of Gorgonio Villareal, and we will not disturb the verdict as to him. Another strange circumstance in the case is that Jesus Gallardo, who was jointly indicted with appellants, charged with this murder, and who Lawrence Morris says went with appellant Gorgonio when he, Morris, was told by appellant that he was going to Ricardo and get deceased out of the way, and was with appellant when appellant told Morris the next morning that he had gotten deceased out of the way, disappeared on that Monday morning and has not been seen nor heard of since that time.

The court permitted a sufficiently broad scope in the cross-examination and impeachment of the witness Refugia Rodriguez, and there was no error committed in sustaining the questions propounded as shown by bills of exception Nos. 1 and 2, and the same may be said as to the witness Toribia Ortiz in bills Nos. 3, 4 and 5. These bills are very incomplete, some of them showing the questions which were not permitted to be propounded, do not show what the answer would have been, nor, where the questions were permitted to be propounded, what answer the witness really would have made.

As to the questions propounded to the witness Lawrence Morris and questions propounded to Mrs. James Rowland on cross-examination, the answers of the witnesses are not given, nor is it stated what could have been proven by them, nor the substance of what was proven or expected to be proven.

As presented in this record, bills Nos. 6, 7, 8 and 9 present no error, and if they were more full and complete, under the record before us no error would be presented.

It was permissible to elicit from appellant Gorgonio Villareal that he was under indictment for horse theft as affecting his credit as a witness, he having testified in his own behalf.

The only other question presented by the record is an affidavit of one of the jurors, S. L. Cotten, seeking to impeach the verdict. He says that the jury when they first retired stood seven for conviction and five for acquittal. That after the case was discussed they all voted for conviction. That what induced him to vote for conviction was that he and most of the jurymen believed that Lawrence Morris killed the deceased, and that the defendants in this case knew something of the crime, and if they were convicted they would tell what they knew, and in such event a pardon could be secured. He states that he voted guilty by ballot, and also when the jury was polled, but he did not believe the defendants guilty. A juryman will not be thus permitted to impeach his verdict after being discharged and permitted to mingle with the outside world. Such has been the unbroken rule of decision in this court. Johnson v. State, 27 Texas, 758; Weatherford v. State, 31 Texas Crim. Rep.; 530; Pilot v. State, 38 Texas Crim. Rep., 515; Henry v. State, 43 S. W. Rep., 340; Montgomery v. State, 13 Texas Crim. App., 74, and other cases cited in sec. 1151 of White's Ann. Proc.

The judgment is reversed and remanded as to Praxedis Villareal and affirmed as to Gorgonio Villareal.

*Reversed and remanded as to one and affirmed as to the other defendant.*

DAVIDSON, JUDGE.—I concur in reversing the case as to Praxedis Villareal, but I can not agree to the affirmance of the judgment as to Gorgonio Villareal, and will write my reasons.

DAVIDSON, JUDGE (dissenting).—I concur in the reversal as to the elder Villareal, and I further believe that the judgment ought to have been reversed as to Gorgonio Villareal. The evidence places the elder Villareal in the vicinity of where the homicide occurred and shortly prior to the tragedy, in company with Jesus Gallardo. The State sought to show, and largely predicated its case upon the fact, that the parties who did the killing were in a buggy. The elder Villareal and Gallardo were in a buggy and are supposed to have left the ranch where the homicide occurred shortly prior to the killing the same evening. The State's case as to Gorgonio Villareal is made by the testimony of Lawrence Morris. In substance his testimony is, his wife was related to the Villareals; that he and his wife were on a visit to the Villareal ranch, and had been a day or two prior to the homicide; that that ranch was eight or ten miles or something like that from the scene of the homicide. His testimony is, further, that Gorgonio Villareal left the Villareal ranch at about 3 o'clock on Sunday evening and returned during the night. That when he left the ranch he was horseback and carried a rifle. This was the only rifle on the Villareal ranch. He further testified that on Monday morning Gorgonio told him that he had made away or gotten rid of the deceased, calling him by name. This is the substance of the State's case, except by the same witness introduced some evidence showing a motive on the part of appellant Gorgonio to do the killing. He says this grew out of an affection or love for the wife of the deceased, and that is the motive relied upon by the State, or at least seems to be. Of course, all those things were met on the trial and by some of the State's evidence, that there was evidence to show the motive alleged by this witness was false; that there was nothing improper, and had not been between defendant Gorgonio and the wife of deceased, and that they had not been together to amount to anything for quite a while. So all the facts disconnected appellant Gorgonio with the buggy. All the facts put the elder Villareal and Gallardo in the buggy. To meet Morris' testimony that Gorgonio Villareal absented himself from the ranch, carrying the gun mentioned by Morris, as well as to disprove the confession stated to have been made by Villareal to Morris, the witnesses at the Villareal ranch were introduced, and every one of these placed upon the stand testified that there was but one rifle on the ranch, and it had a screw missing which had to be fixed; that Morris left the ranch, leaving his wife at the ranch

on Sunday evening about 3 o'clock, and rode away horseback, carrying
this gun with him to have it fixed, and that he was gone from the
ranch until perhaps Tuesday, or at least until late Monday evening.
All of these witnesses testify that the defendant Gorgonio did not leave
the ranch after 12 o'clock on Sunday; that he was working about the
place during Sunday evening, they going into detail as to what the
work was and what he was doing. That he was also at home the next
day working and remained about there. That Morris was not at the
ranch Monday morning, which rendered it impossible that any con-
fession should have been made as he swore. In fact, the testimony of
all of the witnesses at the ranch by each side placed on the stand tes-
tified positively that Morris took the gun and left the ranch Sunday
evening and did not return to the ranch until late Monday evening or
Tuesday. That he carried the gun away with him to have a screw
fixed and brought it back with the screw fixed. In addition to this,
other State witnesses, among them the constable and a Mexican woman,
Refugia Rodriguez, testified they saw him Monday morning about 10
o'clock in Falfurrias, twenty miles away from the Villareal ranch; they
talked with him. These were State's witnesses, but were not at the
ranch. If Morris' testimony is eliminated, the State would not have
had evidence enough to have gone to the jury with any hope of a con-
viction. Morris accounts for himself only by stating that he spent
Sunday night at the Villareal ranch. Every witness testifies to the
contrary, and his wife, who was at the ranch, was not even placed on
the stand to sustain him. So he stands with every witness, State and
defendant, who testifies to the facts with reference to what has been
above stated contradicting, and the State stands alone upon the testi-
mony of this witness Morris. The writer does not understand how any
jury would have convicted on the testimony of Morris.

On the motion for a new trial one of the jurors filed an affidavit in
line with the matters I have just stated. The facts show a complete
alibi for Morris from the ranch, but not from the scene of the homi-
cide, he leaving the ranch in possession of the gun that is supposed to
have been used and the State relied on as being used to commit the
homicide. He was not accounted for from the time he left the ranch
until Monday morning about 10 o'clock twenty miles away at Falfurrias.
Ten o'clock or about 10 o'clock is the time he states defendant Gorgonio
made the confession to him at the Villareal ranch. At that hour the
constable, Mr. With, and Refugia Rodriguez testify they saw and talked
with Morris at Falfurrias. They were State witnesses. Every witness
except Morris proves an alibi for the defendant Gorgonio from the
scene of the homicide and his presence at the ranch ten or twelve miles
from where the homicide occurred. In addition to this, the affidavit
of the juror is filed and appended to the motion for a new trial, in
which it is stated that he and most of the jurors did not believe de-
fendants guilty but did believe Morris guilty, giving various reasons
for such belief and why a verdict was finally reached convicting the
defendants; that by convicting appellants "the State might get the

right man," and in that event the jury "would sign up a petition to free these defendants. . . . Though I never believed the defendants were proven guilty, and did not then believe them proven guilty when I agreed to verdict of guilty, and do not now believe that the defendants are guilty under the evidence on the trial, but do believe that by finding the defendants guilty that the guilty party might be found and that the defendants thereafter can be released." The rule is invoked that the jury are the exclusive judges of the facts proved and the weight to be given the testimony. This is the general proposition asserted by the statute and marks the dividing line between the authority of the jury as to the facts and that of the court as to the law. Article 734 of the Revised Procedure so provides, and further, that the jury are not the judges of the law in any case but must take the law from the court. Practically the same rule is laid down in article 786, Revised Code of Criminal Procedure. This, however, does not mean that the jury may arbitrarily convict, nor do these articles annul the fundamental principle of the law which provides that the presumption of innocence and reasonable doubt shall be the law of every criminal case. In finding a verdict and passing on the facts, the verdict must be in consonance with the presumption of innocence and reasonable doubt. These presumptions are binding fully on the jury, and requires that body to weigh the facts from these standpoints. It is a clear limitation on the exclusive power of the jury deciding the facts and the weight of the testimony. The jury must receive the law from the court and be governed by it. See article 734, supra. The court must charge these presumptions, and the jury must be governed by them. They furnish the criterion by which facts are to be solved. This is a statutory rule that is to be read into and considered with the statute with reference to the province of the jury in passing on the facts. They have no right, no authority in law or good conscience to convict a man until the presumption of innocence and reasonable doubt have been overcome. They do not become arbitrarily the judges to set aside the presumption of innocence. This must be done by the facts, and the State can not ask in good conscience a verdict of conviction until the presumption of innocence to the exclusion of the reasonable doubt has been overcome by facts. These are fundamental rules fixed by law and can not be ignored by the jury any more than by the court. The jury is practically prohibited from viewing the facts from any other standpoint than from the presumption of innocence and reasonable doubt, and no verdict ought to be permitted to stand that does not overcome these basic principles of the law. These presumptions, or rather presumptions of innocence must be overcome. It is not what we call a conclusive presumption, but still it is a presumption in favor of innocence that must be overcome by facts, and because the jury are the exclusive judges of the facts does not abolish the statutory rule of the presumption of innocence and reasonable doubt. It may be overcome, but it must be overcome by evidence of a trustworthy nature. Though it is the province of the jury to find the facts, that body can

not deduce from the facts an unfavorable deduction or conclusion unless the favorable conclusion or deduction is excluded as unreasonable. Cromeans v. State, 59 Texas Crim. Rep., 611. That is a sound and correct rule. That opinion is a clear enunciation of the law—in full harmony with the statutes. Applying this rule then to the facts of this case, and the record as it comes to this court, the finding of the jury is not correct. It does not speak a true verdict either in law under the evidence, or viewed from the standpoint of the uncontradicted affidavit of the juror that they did not believe appellants to be guilty. The accused is entitled to a fair trial and on competent evidence. He should never be convicted when the jurors who convict him admit his innocence, but convict him not because he is guilty but in order, by doing so, they might reach somebody else who was guilty. He should not be the "scape-goat for the sins turned loose in the wilderness." That is not the rule under our law. The man who is on trial and convicted must be proved guilty. He is not made the innocent "victim for the sins of the people." While this court should be cautious in setting aside a verdict on the question of fact, yet it has power to do so, and on proper occasion should rise to the emergency. This court is empowered to reverse on the facts, and it becomes its solemn duty to do so to prevent unjust convictions. This court should not lend itself to the affirmance of a case that comes to us in the shape this record does. It is said that a juror will not be heard to impeach his own verdict. That may or may not be correct, owing to circumstances, and the manner in which it comes. I am of opinion that a verdict may be impeached whenever that impeachment carried corruption with it on the part of the jury. The verdict is admitted to be an illegal conviction, stating the want of belief on the part of the jury from the facts of the guilt of the man they are incarcerating in the penitentiary. This juror stands uncontradicted as to his statements in this matter. Our court had power to investigate this matter and award a new trial, even on the facts as is plainly stated in the statutes of our State. See articles 938 and 939, Revised Code of Criminal Procedure. The court has the power to reverse for want of sufficient evidence, and in this case, in my judgment, the conviction against Gorgonio should have been reversed as well as that against the elder Villareal. In fact, in my judgment, the case is more favorable to Gorgonio than it is to his father. If Morris had been placed on the stand for perjury, his guilt would not have been the subject of debate, if this record is true, and this by the State's own testimony, and he was the man they were relying upon to incarcerate two men who the juror swears that the jury believe are not guilty. Perjury ought never to be regarded as sufficient to justify a conviction in the trial court, and certainly not of an affirmance by this court. This unfavorable verdict is a deduction most unfavorable on a state of facts from which no legitimate deduction of guilt can be inferred or ought to be inferred, as I understand this record.

For these reasons I concur in the reversal as to the elder Villareal, and dissent from the affirmance of Gorgonio Villareal. I do not be-

lieve these men to be guilty, and I think the evidence shows beyond any question that fact and conclusion.

Since filing this dissent Judge Harper has called my attention to the fact that I was in error in stating that Gorgonio left his ranch on horseback and Gallardo in the buggy. This I find to be correct. I should have stated that Gorgonio was in the buggy and Gallardo on horseback. This correction is made so as to conform to the evidence of Morris.