Ricardo YZAGUIRRE, Appellant,

v.

STATE of Texas, Appellee.

No. 372.

Court of Civil Appeals of Texas.

Corpus Christi.

April 18, 1968.

Mathews & Walsh, Joe W. Walsh, Brownsville, for appellant.

Ann Gann, Asst. Dist. Atty., Brownsville, for appellee.

## OPINION

GREEN, Chief Justice.

This appeal is from a judgment of the District Court of Cameron County, Texas, 138th Judicial District of Texas, Sitting as a Juvenile Court, declaring appellant Ricardo Yzaguirre to be a delinquent child, under Art. 2338–1, Vernon's Ann.Tex.Civ. St., and committing him to the care, custody and control of the Texas Youth Council in accordance with Article 5143d, V.A.T.S. The petition in the trial court sought to have the two juveniles named therein, to-wit: appellant and one Abraham Gonzales, each declared to be a delinquent child by reason of their having committed in Cameron County a number of specifically alleged offenses, including the unlawful and voluntary killing with malice aforethought of one Roberto Medina by stabbing him with a knife. The trial was had before the judge without a jury. No severance was requested, and the two juveniles were tried jointly. Each juvenile was represented in court by employed counsel and the parents of both of said juveniles were present in court during the proceedings. . After all parties had rested, the court found that the material allegations in the petition concerning the delinquent behavior of both juveniles in connection with the stabbing death of Roberto Medina on or about June 17, 1967, were true, that each juvenile was a minor of the age of fourteen years, and adjudicated appellant and Abraham Gonzales each to be a delinquent child. The court expressly found that none of the other charges contained in the State's petition were substantiated by the evidence. Only Yzaguirre has appealed.

A written statement of appellant in which he admitted stabbing deceased with a knife under circumstances supporting the conclusions reached by the trial court was admitted in evidence over appellant's objections. We shall discuss the matter of the admissibility and effect of this "confession" further under appellant's third, fourth and fifth points, and appellee's counter-point.

Aside from the "confession" several eye witnesses testified to events in connection with the stabbing of deceased. It was shown by such sworn testimony that the stabbing occurred at a dance being held at Ringgold Park Pavilion in Brownsville on the night of Saturday, June 17, 1967. A number of young teenagers were in attendance, including appellant and his co-defendant Abraham Gonzales, two brothers of Gonzales, deceased, and others. There was evidence of several fights among these youths during the evening. There was testimony of ill feeling between two factions and that shortly before deceased was cut, appellant while in a rest room had a knife and stated to Abraham Gonzales that he was going to kill one of the Medinas with his knife. Subsequently, according to testimony, Abraham and deceased got in a fight in which appellant also participated, and either during the fight or immediately

after it was over appellant stabbed deceased with his (appellant's) knife. Medical testimony established that deceased, who had been taken to a hospital, died the next morning as the result of the knife wound.

Appellant does not by any point of error or by argument attack the sufficiency of the evidence to support the court's findings of facts, or the court's judgment.

Appellant bases his appeal on seven points of error, as follows:

### FIRST POINT

The Court erred in proceeding to hear the case before the Court without Appellant's proper jury waiver.

### SECOND POINT

The Court erred in adjudicating Appellant a delinquent without a plea being entered nor an arraignment being held.

### THIRD POINT

The Court erred in admitting into evidence the purported voluntary statement of Appellant.

### FOURTH POINT

The Court erred in stating that it did not use the purported voluntary statement of Appellant in reaching its decision.

### FIFTH POINT

The Court erred in failing to use the exculpatory statements, which were contained in the purported voluntary confession of Appellant.

### SIXTH POINT

The Court erred in adjudicating the Appellant a delinquent without ruling on Appellant's motion to be acquitted of paragraphs four and five of Appellant's Petition.

### SEVENTH POINT

The Court erred in failing to appoint a guardian ad litem.

The Legislature of Texas and Texas appellate courts have made it abundantly clear that a proceeding to have a juvenile declared to be delinquent is a civil matter and that the statutes and rules relating to civil actions should govern as far as practicable. Art. 2338–1, Revised Civil Statutes of Texas; Dendy v. Wilson, 142 Tex. 460, 179 S.W.2d 269, 151 A.L.R. 1217; Steed v. State, 143 Tex. 82, 183 S.W.2d 458; Espinosa v. Price, Chief Justice, et al., 144 Tex. 121, 188 S.W.2d 576, 160 A.L.R. 284; Gamble v. State of Texas, Tex.Civ.App., 405 S.W.2d 384, n. w. h.; Solis v. State, Tex.Civ.App., 418 S.W.2d 265, n. w. h. The delinquent juvenile act, Art. 2338–1, does not undertake to convict a child for the commission of a crime. Sec. 3(a) of said article defines a delinquent child to be a person within the qualifying age limits who violates any penal law of this State of the grade of felony, and this definition furnishes the basis for civil proceedings against such a child under the act.[1] The issue to be determined is whether the juvenile is a delinquent child within the meaning of the statutes.

This cause went to trial June 27, 1967, the judgment being signed June 28, 1967. This was prior to the effective date of the 1967 amendments to Art. 2338–1, i. e., August 28, 1967. However, the factual situation of this case is such that said 1967 amendments would not have made any difference in the manner in which the trial was conducted. See The New Juvenile Delinquent Law by Robert Billings, Vol. 31 of Texas Bar Journal, No. 3, p. 203 et seq., (March 22, 1968.)

Section 13 of Art. 2338–1 provides in part that "If no jury is demanded, the Judge shall proceed with the hearing. * * *" Thus, the juvenile is accorded

---

1. Sec. 3(b) to (g) inclusive specifies other misconduct below the grade of felony which can cause one to be a delinquent child.

the right to a jury trial provided he desires one and makes the request. In this hearing, appellant was represented by able counsel. No jury was requested.

■ Appellant contends under his first point that where judicial process seeks to deprive a person of his freedom for committing an offense against the State, such legal proceedings even though they are held under the provisions of the delinquent juvenile statutes should be controlled by the rules which govern criminal proceedings. Art. 1.13, Vernon's Ann. Code of Criminal Procedure, provides that the defendant in a felony prosecution shall have the right to waive a jury trial "conditioned, however, that such waiver must be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the State." It is appellant's contention that this statute is applicable in a juvenile hearing, and since he did not expressly in writing with the written consent and approval of the court and State's attorney waive a jury, the court erred in proceeding to trial without one. We overrule this contention. This was not a criminal trial, and Art. 1.13, C.C.P., does not apply. Since no demand for a jury as provided in Art. 2338–1, Sec. 13, supra, was made, the court did not err in proceeding with the hearing without a jury. Dendy v. Wilson, supra; In re Gonzalez, Tex.Civ.App., 328 S.W.2d 475, wr. ref. n. r. e.

Appellant cites and relies on the recent decision of our Federal Supreme Court in Application of Gault, 387 U.S. 1, 87A S.Ct. 1428, 18 L.Ed.2d 527 (May, 1967). That case does not support the contention or argument of appellant in this respect. There the majority opinion limits the matters before the court for decision in the following language (p. 1434):

> "They (appellants) urge that we hold the Juvenile Code of Arizona invalid on its face, or as applied in this case because, contrary to the Due Process Clause of the Fourteenth Amendment, the juvenile is taken from the custody of his parents and committed to a state institution pursuant to proceedings in which the Juvenile Court has virtually unlimited discretion, and in which the following basic rights are denied:
>
> 1. Notice of the charges;
>
> 2. Right to counsel;
>
> 3. Right to confrontation and cross-examination;
>
> 4. Privilege against self-incrimination;
>
> 5. Right to a transcript of the proceedings; and
>
> 6. Right to appellate review."

■ The court in a very thorough majority opinion by Justice Fortas in which he discussed at length these six features of the juvenile trial in question held that the Due Process provisions of the Fourteenth Amendment and the Bill of Rights apply to juveniles as well as to adults, and that the Arizona Juvenile Code and the trial court had denied to the juvenile "the basic requirements of due process and fairness" with respect to the first four of such basic rights. The majority opinion discussed but did not definitely rule upon the right to a transcript and the right of appeal. The court, however, did not in any way deny to the State Legislatures and State courts the power and right to determine the rules of procedure in juvenile trials *as long as such rules do not violate the basic requirements of due process and fairness.*

■ In the hearing below, as distinguished from Gault, the petition which brought appellant into court set out in specific language the charges against him, and he and his parents had notice of such charges in ample time so that their employed counsel announced ready, with appellant's witnesses on hand, to go to trial when the cause was called. The juvenile, his counsel and his parents had the right and exercised it to confront and cross-ex-

amine the State's witnesses, and to have their own witnesses testify, as shown by the 316 page statement of facts. The evidence was taken down and transcribed by an official court reporter, and has been filed in this Court. He had the right to appeal, and has duly exercised such right. He and his able counsel had the legal right to trial by jury, but they chose the trial before the court. Appellant has not pointed to any provision of our juvenile laws, nor to any procedure in the trial below except that of self-incrimination which we will discuss under appellant's third, fourth and fifth points, which he contends violates the requirements of *due process and fairness*. We overrule his first point.

As to appellant's second point that an arraignment of the defendant and an opportunity to plead to the charges were necessary under the provisions of Art. 26.01 et seq. of the Code of Criminal Procedure, we repeat that this proceeding was not a criminal trial, and Art. 26.01, C.C.P. was not applicable. In this respect, however, the judgment of the trial court recites that Ricardo Yzaguirre, his counsel and his parents appeared in court in person, announced ready for trial, and entered a general denial of all the allegations against the said juvenile. We find nothing in the record to dispute this recital of the trial court. The second point is overruled.

Appellant's third, fourth and fifth points of error deal with the admission in evidence over objections of his purported written confession, and the effect thereof. Appellee's reply point[2] is to the effect that in the event this Court finds that the statement was inadmissible the record shows that the trial court did *not* consider the written statement and thus the error was corrected.

The testimony of Justice of the Peace Gavito reflects that at or near 10:00 o'clock A.M., Sunday, June 18, 1967, appellant was brought to his home by Detective Sergeant Pat Tamayo, who previously that morning had sworn out a complaint charging appellant with assault with intent to murder; that while at the judge's home Tamayo after receiving a phone call notifying him that Medina had just died filed another complaint charging appellant with murder; that at *10:06 A.M.*, Gavito advised appellant of the accusation against him, explained the penalty the law imposed (although he wasn't sure of what action would be taken since appellant was a juvenile) and gave him the statutory and constitutional warning as to his rights to make a statement, including his right to have a lawyer either employed or appointed, and asked appellant if he wanted to have a lawyer present, to which question appellant remained silent. Thereupon the judge asked him if he wanted to make a statement, to which appellant replied that he did not. Judge Gavito did not take a statement from appellant. Detective Sergeant Tamayo then left with appellant in his custody, and after a brief stop at the hospital where deceased had died, took appellant to the police station where at *10:32 A.M.* he proceeded to question appellant alone in a room. At times an assistant district attorney and the juvenile officer passed in and out of said office. Tamayo testified he read and explained to appellant the warning at the commencement of the statement, which reads as follows:

"I, *Ricardo Yzaguirre*, before being interrogated and after first being duly warned by *Juan E. Gavito* of *Brownsville, Cameron*, at _____ M., at *his residence* on *June 18th, 1967* of the accusation against me of *Murder with Malice* and the affidavit, if any, filed in support of such accusation; that I have a right to retain counsel; that if I am unable to obtain counsel that I can request the appointment of counsel; that I have a right to an examining trial; that I am not required to make any statement at all and that any statement I do make

2. Mistakenly designated "cross-point" in appellee's brief. Jackson v. Ewton, Tex.Sup.Ct., 411 S.W.2d 715.

may be used against me; and *Detective Sergeant Pat Tamayo,* the person to whom this statement is made, also warned me at the beginning of the interrogation that I do not have to make any statement at all; that I have a right to consult with a lawyer; that if I cannot afford a lawyer one will be provided for me; that I have a right to have my attorney present during the interrogation; and that any statement made by me may be used in evidence against me in the trial or trials of the offense or offenses concerning which this statement is made, do hereby make the following voluntary statement: * * *."

According to Tamayo, he had known appellant a long time, and after he explained the seriousness of the complaint, and that appellant could be sent to the reform school to the age of 17, and be sent to the penitentiary or be tried at the age of 17 for the offense, and answered in the affirmative appellant's question: "Is there a school? Can I go to school at the ranch?" the appellant then agreed to give him a statement and .proceeded to give the statement which Tamayo typed. This written statement was signed by appellant, and witnessed by the assistant district attorney and the juvenile officer who had been in and out of the office while Tamayo had been talking to appellant.

After the court had overruled appellant's objections to the introduction of the "confession" in evidence, but before it was formally admitted, appellant's counsel placed him on the stand for the limited purpose of testifying in voir dire as to the taking of the confession. Although he stated that Detective Tamayo did not mistreat him in any way, appellant testified that the officer did promise to help appellant and that he would be sent to a school, and that it was on account of such representations that he agreed to give the written statement. He further stated that he read parts of the statement and understood what was said, and that he signed it, but in reply to a question whether what he told Officer Tamayo was the truth, he replied that it was not.

The Court held in Application of Gault, supra, that the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults. (p. 1458 of 87A S.Ct.) We have serious doubts as to the admissibility in evidence of the "confession" of the fourteen year old youth taken under the circumstances shown, in the absence of his parents and a lawyer, by a detective sergeant in the police station making the representations as testified to by the officer himself just twenty-six minutes after the juvenile had stated to the magistrate in the latter's home that he did not want to make a statement, and when he had not waived the presence of a lawyer unless it be considered that by his silence on the question of a lawyer he had waived the presence of one. Application of Gault, supra, pp. 1451–1459 of 87A S.Ct.; Miranda v. State of Arizona, U.S. Sup.Ct., 384 U.S. 436, 86A S.Ct. 1602, 16 L.Ed.2d 694. One principal holding of the majority of the Court in Miranda is that when at any time in the course of custodial interrogation, which in our case began at Judge Gavito's home twenty-six minutes prior to the taking of this statement, the accused seeks affirmatively or impliedly to invoke his rights to silence or to counsel, further interrogation must be foregone or postponed. (Page 1612, page 1641, 86A S.Ct.)

■ But it is not necessary that we determine whether the trial court committed error in overruling appellant's objections to the admission in evidence of the confession. This was a trial without a jury, in which the judge determined both the facts and the law. At the close of the evidence the court announced that there was sufficient testimony against both juveniles on the stabbing charge, and invited argument from counsel on the matter of disposition of defendants. Appellant's counsel thereupon asked for a ruling from the court whether or not the decision of the court as to his client was based' at least partially

upon the confession, and as to whether or not the court took it into consideration. The trial judge, in answer to this request, expressly stated that he did not use the confession at all, that he read it hurriedly but that he did not predicate his decision on the matter of the confession, and that he "went only on the evidence."

In addition, the trial court filed findings of fact and conclusions of law, which we copy as follows:

"In response to the request of Juvenile Ricardo Yzaguirre in the above entitled and numbered cause, I make and file the following as my findings of fact and conclusions of law therein: *The findings of fact being predicated on all the evidence introduced at the trial, with the exception of the said juvenile's purported voluntary statement, which the Court admitted in evidence but did not consider in determining the case:* (emphasis added)

## FINDINGS OF FACT

1. The juvenile Ricardo Yzaguirre is a male under the age of 17 years, having been born on the 24th day of February, 1953.

2. The juvenile Ricardo Yzaguirre is a resident of Cameron County, Texas, having his residence at 133 Lemon Street in the City of Brownsville, Cameron County, Texas.

3. On the 17th day of June, 1967, the juvenile, Ricardo Yzaguirre, did then and there unlawfully, voluntarily and with malice aforethought, kill Roberto Medina by stabbing him with a knife, which stabbing occurred in the City of Brownsville, Cameron County, Texas.

4. Roberto Medina died as a result of the stabbing June 18, 1967.

5. The best interest of said juvenile, Ricardo Yzaguirre, willl be served by commitment to the Texas Youth Council uninterrupted during the time of appeal.

## CONCLUSIONS OF LAW

1. That Ricardo Yzaguirre is a juvenile subject to the jurisdiction of this Juvenile Court.

2. That Ricardo Yzaguirre is guilty of violating a penal law of this State of the grade of a felony, to-wit: Murder with Malice, and by virtue thereof is a delinquent child as provided by law.

3. As a delinquent child, Ricardo Yzaguirre is committed to the Texas Youth Council, and for the protection and best interest of said child the order of commitment of custody to the Texas Youth Council is not suspended."

Thus we must assume from the court's own declarations that the written statement did not in any manner influence his decision, and that he totally disregarded it. To draw any other assumption or conclusion would be to do violence to Judge Garcia's positive statements.

 As we have heretofore set forth, laying the statement aside and not considering it, there was ample other admissible material evidence in the record to support the judgment of the court. In such case, the presumption in a non-jury trial is that the trial court did not consider the inadmissible evidence. Here we do not need to rely upon such presumption, because we have the positive declaration of the trial judge that he did not consider the statement. The rule of law is well established that the admission of improper evidence in a trial to the court without a jury is harmless where there is sufficient proper evidence upon which to base the decision. Millican v. Millican, 24 Tex. 426, 453; Lindsay v. Jaffray, 55 Tex. 626, 640; Ferguson v. Ferguson, Tex.Com.App., 23 S.W.2d 673; Chicago R. I. & T. Ry. Co. v. Halsell, 98 Tex. 244, 83 S.W. 15; Stevens Bros. v. Mills, Tex.Civ.App., 336 S.W.2d 921, wr. ref. n. r. e.; Hoffman v. Tolbert, Tex.Civ.App., 327 S.W.2d 604, 610, n. w. h.; Clower v. Brookman, Tex.Civ.App., 325 S.W.2d 440, 445, n. w. h.; Renshaw v.

Countess, Tex.Civ.App., 289 S.W.2d 621, n. w. h.; Hampton v. Nix, Tex.Civ.App., 281 S.W.2d 126, n. w. h.; Martin v. Reid, Tex.Civ.App., 160 S.W. 1094, wr. ref.; Phillips v. Bowie, Tex.Civ.App., 127 S.W. 2d 522, wr. dis. corr. judg.

Of course the rule is different and the presumption of no reversible error will not apply where it appears probable from the record before the appellate court that the trial court's decision was affected by the improperly admitted evidence. Victory v. State, 138 Tex. 285, 158 S.W.2d 760; Moore v. Kennedy, 81 Tex. 144, 16 S.W. 740; International & G. N. Ry. Co. v. Startz, 97 Tex. 167, 77 S.W. 1; Wagoner v. Ruply, 69 Tex. 700, 7 S.W. 80, 82; Dominy v. Dominy, Tex.Civ.App., 305 S.W.2d 389, n. w. h.; Wooten v. Clark, Tex.Civ. App., 276 S.W.2d 391, n. w. h. In Application of Gault, supra, Justice Fortas in the majority opinion, in ruling that the juvenile's rights against self-incrimination had been denied him in the trial court, called attention to the fact that "The judgment of the Juvenile Court was stated by the judge to be based on Gerald's (Gault's) admissions in court", (p. 1458 of 87A S. Ct.) and "Apart from the 'admission' there was nothing upon which a judgment or finding might be based. There was no sworn testimony." (p. 1459). The same opinion concluded, on this phase of the appeal: "We now hold that, absent a valid confession, a determination of delinquency and an order of commitment to a state institution cannot be sustained in the absence of sworn testimony subject to the opportunity for cross-examination in accordance with our law and constitutional requirements." (p. 1459)

We have carefully considered appellant's third, fourth and fifth points, and have concluded that no reversible error is shown as the result of the trial court's action on the written statement of appellant. Appellee's reply point is sustained.

 Appellant's sixth point is without merit. After all parties had announced

they had no further evidence to offer, the court stated that he was ruling for the juveniles on all counts except those charging the stabbing offense. In the judgment the court expressly found that the State had failed to offer evidence substantiating such other charges.

 The appellant juvenile having been represented in court by employed counsel, and both of his parents having been present in court during the entire proceedings, the court was not required to appoint a guardian ad litem for the appellant under Rule 173, Texas Rules of Civil Procedure, and no error was committed by its failure to do so. In re Gonzalez, Tex.Civ.App., 328 S.W.2d 475, wr. ref. n. r. e.; Lee v. McKay, Tex.Civ.App., 414 S.W.2d 956, wr. dism.

Judgment affirmed.