Roger Lee MERCER, Appellant,

v.

The STATE of Texas, Appellee.

No. 11724.

Court of Civil Appeals of Texas, Austin.

Jan. 28, 1970.

Rehearing Denied Feb. 18, 1970.

Phillip Sanders, Seth B. Cox, Jr., Austin, for appellant.

Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., Hawthorne Phillips, Exec. Asst. Atty. Gen., Robert C. Flowers, Bennie W. Bock, II, Monroe Clayton, Asst. Attys. Gen., Ray Grill, Austin, for appellee.

O'QUINN, Justice.

This is an appeal from the juvenile court of Travis County in which appellant was adjudged a delinquent child and committed to the custody of the Texas Youth Council.

These proceedings grew out of discovery, by the principal of the school the youth was attending, of several forms of marijuana in possession of appellant.

Appellant contends that the marijuana he took from his pockets and placed on the principal's desk was recovered by an unreasonable search and seizure in contravention of his constitutional rights afforded by the Fourth Amendment to the Constitution of the United States and that at the disposition hearing following trial, the court permitted the introduction of a "supplemental report" containing hearsay to the prejudice of appellant.

We affirm the action of the trial court.

Appellant was a student at Reagan High School in Austin. The dean of men received a "tip" that appellant was in possession of marijuana at school and relayed the information to the principal. The principal caused appellant to be brought to his office where he directed the youth to empty his pockets. Appellant after some hesitation emptied his pockets upon being informed that his father would be called if he failed to comply with the principal's request. This procedure produced two marijuana cigarettes, marijuana, and marijuana seed.

No force was used on appellant, nor was he searched or handled by the principal in the usual sense. The youth testified that if his father had been called, the father would have made appellant empty his pockets, and his father would not have used force to require the boy to empty his pockets.

After appellant emptied his pockets, the principal called the youth's father. Following the father's arrival, the police were called, with the father's knowledge. The principal told appellant's father, "You understand I am going to have to call the police," and the boy's father said, "Yes."

We have able briefs from counsel affording extended examination of the case law and legal writings pertaining to search and seizure. Upon due consideration, we conclude that the principal of the school in insisting that appellant disclose the contents of his pockets acted in the place of the boy's father, and that the father by words and action later acquiesced in the summoning of police officers which resulted in trial of appellant as a delinquent.

█ The statute under which appellant was declared a delinquent makes the proceeding a civil action, and the law does not provide for conviction and punishment of the minor for commission of a crime. Article 2338–1, Vernon's Ann.Tex.St.; Yzaguirre v. State, 427 S.W.2d 687 (Tex.Civ.App., Corpus Christi, 1968, no writ); Solis v. State, 418 S.W.2d 265 (Tex.Civ.App., San Antonio, 1967, no writ). The Supreme Court of Texas in 1969 concluded that the rule of In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) "* * * does not require that the juvenile trial be adversary and criminal in nature, and that the 'beyond a reasonable doubt' test is not required." State v. Santana, 444 S.W.2d 614 (Tex. 1969).

█ Unreasonable seizure forbidden by the Fourth Amendment is that undertaken through governmental action, and the security afforded by the Amendment is not invaded by acts of individuals in which the government has no part. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). The principal in dealing with appellant acted *in loco parentis*, not for an arm of the government, when he demanded that appellant disclose the contents of his pockets.

Blackstone stated this authority of the school principal as one delegated by the parent. It was said that a parent may delegate part of parental authority to the schoolmaster " * * * who is then *in loco parentis,* and has such a portion of the power of the parent * * * as may be necessary to answer the purposes for which he is employed." 1 W. Blackstone, Commentaries, 453.

This principle has been recognized in Texas. Hailey v. Brooks, 191 S.W. 781 (Tex.Civ.App., Fort Worth, 1916, no writ). In Hailey the court asserted that

'Generally speaking * * * the * * * principal * * * of a public free school, to a limited extent at least, stand[s], as to pupils attending the school, in loco parentis, and * * * may exercise such powers of control, restraint, and correction over such pupils as may be reasonably necessary to enable the teachers to perform their duties and to effect the general purposes of education."

It does not seem to be outside the purposes of discipline in a system of education for the principal of a public school to discover and bring under control drugs considered dangerous under law and possession of which is made an offense by law. The same procedure employed by the principal, if used by the boy's father, would not violate security of appellant under the Fourth Amendment.

Even with a statute granting to teachers in public schools "the same authority as to conduct and behavior over the pupils * * * as the parents * * * may exercise over them * * *", 24 P.S.Pa. § 13–1317, the law has been construed as limiting the grant to those powers necessary to effectuation of the school's purposes. Guerrieri v. Tyson, 147 Pa.Super. 239, 24 A.2d 468 (1942).

This rule is concisely stated in the Restatement of Torts, Second, limiting *in loco parentis* authority of a school to the purposes of the school's existence. Restatement (Second) of Torts, secs. 152, 154 (1965). See discussion in 117 Pa.L. 373, 377 et seq.

In Texas it has been held that schools have plenary parental power over pupils while in school, and that violation of a rule not shown to be an abuse of power and discretion to insure proper conduct and decorum may be punished even though in violating the rule the pupil "was following her father's instructions." McLean Independent School District v. Andrews, 333 S.

W.2d 886 (Tex.Civ.App., Amarillo, 1960, no writ).

About a week following trial of appellant a disposition hearing was conducted, with a different district judge presiding. After the disposition hearing, the trial court stated to appellant, "I have come to the conclusion that the best thing to be done for you as well as for society is that you be committed to the Texas Youth Council."

At the disposition hearing appellant objected to the presentation of a "supplemental report" to the court on the grounds that the report contained hearsay evidence, was prejudicial, contained unsworn testimony and inflammatory matter, and was not subject to cross examination.

The presiding judge overruled the objections and stated:

> "The objection is overruled, with this statement: that the Court, if he considers the supplemental report at all, will only consider—or, will not consider any portion thereof which would not be admissible in the trial of a criminal action."

 No findings of fact or conclusions of law were requested or filed. This being a civil action, the usual rules of procedure in civil cases are applicable. Without findings of fact or conclusions of law, the trial court is presumed in rendering its decision not to have considered inadmissible evidence. Unless appellant shows from the record that under no theory was the court authorized to enter judgment, the cause will be affirmed if the judgment on any theory is supported by the statement of facts. 3 Tex.Jur.2d, Appeal and Error—Civil, p. 689, sec. 438; Rosales v. Rosales, 377 S.W.2d 661 (Tex.Civ.App., Corpus Christi, 1964, no writ).

 Appellant brings a seventh point of error that the testimony of two employees of the juvenile detention home was incompetent, irrelevant, and highly inflammatory. The trial court sustained objections on the ground of hearsay as to the testimony of these witnesses, but did admit other testimony that appellant had left the juvenile home without permission after being committed pending the disposition hearing and upon being returned gave the appearance and bore the marks of a person under the influence of drugs. Appellant relies upon Article 38.29, Texas Code of Criminal Procedure (1965) which we conclude is applicable to "a defendant in a criminal case" and has no bearing upon a civil proceeding as the one before us.

We have carefully considered all points of error brought by appellant in this appeal and have overruled all points.

The business of trying and sending young boys and girls to confinement until they attain their majority is a dismal and depressing business. As pointed out by the Supreme Court of Texas in the Santana case, supra, "The policy of the juvenile laws has been fixed by the Texas Legislature; and we conceive it to be our duty to uphold the spriit of that law * * *" 444 S.W.2d 614, 617, col. 2.

The judgment of the trial court is in all things affirmed.

HUGHES, Justice (dissenting).

I agree with all the statements of law from other cases and authorities quoted in the opinion of the Court regarding the legal doctrine of in loco parentis but I do not agree that such authorities have been followed in this case. Rather, I am of the opinion that the Court has enlarged and extended the doctrine of in loco parentis to unconstitutional proportions. I, therefore, respectfully dissent.

In order that the facts may be more fully stated, I copy the following undisputed statement from appellant's brief:

> "On or about February 27, 1969, Mr. Kermit Heiman, Dean of Boys at Reagan High School, Austin, Texas, received a 'tip' from an unidentified student that your Appellant, Roger Mercer, had marijuana in his possession. This information was conveyed to Mr. J. Davis Hill, Principal of Reagan,

who then sent the Dean to get Roger and bring him to his (Mr. Hill's) office. Mr. Hill had no knowledge as to the reliability of the information or the informant, nor did he know the identity of the informant. Mr. Hill made no inquiry into the identity of the informant, nor did he make any attempt to ascertain the reliability of the information. The Dean got Roger out of class, took him by his locker, and then took him to Mr. Hill's office. In the principal's office Mr. Hill asked Roger to empty his pockets and Roger refused. Mr. Hill then insisted that Roger empty his pockets. After some discussion Mr. Hill convinced Roger that he was obligated to empty his pockets.[1] Roger then emptied his pockets onto Mr. Hill's desk. The Dean then called Roger's father, James Vernon Mercer. Roger's father was told by Mr. Hill: 'You understand that I am going to have to call the police,' to which Mr. Mercer replied 'yes.' Mr. Hill called the police who arrived at Reagan a short time later and took possession of the items Roger had taken from his pockets and placed upon the principal's desk."

The Court, in its opinion, states:

"The (school) principal in dealing with appellant acted in loco parentis, not for an arm of the government, when he demanded that appellant disclose the contents of his pockets."

This ruling seems supported by the decision In Re Donaldson, Cal.App., 75 Cal. Rptr. 220 (1969). This decision was by the Court of Appeal, Third District. Three Supreme Court Justices, including Chief Justice Traynor, dissented when that Court denied a hearing. I quote from the opinion of the Court:

"We find the vice principal of the high school not to be a governmental official within the meaning of the Fourth Amendment so as to bring into play its prohibition against unreasonable searches and seizures. Such school official is one of the school authorities with an obligation to maintain discipline in the interest of a proper and orderly school operation, and the primary purpose of the school official's search was not to obtain convictions, but to secure evidence of student misconduct. That evidence of crime is uncovered and prosecution results therefrom should not of itself make the search and seizure unreasonable. * *

The school stands in loco parentis and shares, in matters of school discipline, the parent's right to use moderate force to obtain obedience (43 A.L.R.2d 473; 79 C.J.S. Schools and School Districts § 493; People v. Curtiss, 116 Cal.App. Supp. 771, 775, 330 P. 801), and that right extends to the search of the appellant's locker under the factual situation herein related.

The marijuana was not obtained by an unlawful search and seizure."

The California Court cited no authority to support its decision.

In Texas our public schools were created and they function under a constitutional mandate. Art. VII, Sec. 1 of the Texas Constitution provides:

"Section 1. A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools."

A trustee of a school district is a public officer. Kimbrough v. Barnett, 93 Tex. 301, 55 S.W. 120 (1900).

---

1. Under these circumstances there was no consent by appellant to the search.

Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

Regarding school teacher and school employees, I quote from Schools, Tex.Jur.2d, Sec. 202, 203:

"Local administrative officers and teachers in the public school system are ordinarily selected by, and are subject to the control of, the district school trustees. They function under the supervision of the board and are required to comply with its reasonable rules and regulations.

A teachers' retirement system is provided for by statute, having been authorized by the constitution. * * *

Any citizen may have an inherent right to teach in a private school, but no one has an inherent right to teach in the public free schools. Since the state supplies the revenue to support public schools and pay the salaries of teachers, the state may justly claim the right to prescribe the qualifications of those who teach, and name the conditions under which the privilege of teaching may be exercised."

Regarding disciplinary powers of school authorities, I quote from Sec. 237 of the same authority:

"In a limited sense the superintendent, principal, and board of trustees of a public free school stand in loco parentis to pupils attending the school, and they may *officially* exercise whatever powers of control, restraint, and correction over pupils as may be reasonably necessary to enable the teachers to perform their duties and to effect the general purposes of the educational system." (Italics added)

Art. 2898, V.T.C.S., provides, in part, that any child within the compulsory school age (7 and not more than 16 yrs.) who is an incorrigible shall be reported to the attendance officer who shall proceed against such child in the juvenile court.

I cannot agree that Mr. Hill was acting in a purely personal capacity when he demanded that appellant empty his pockets. He was acting within the scope of his duties as an employee of the State. It was through such employment that he succeeded to some of the authority of the parents of appellant under the doctrine of in loco parentis, and but for his position he would have had no parental control over appellant.

It is my opinion that the search made of appellant was a valid administrative search for school purposes only and that to this extent, and this extent only, have the parents of appellant transferred their right as parents to public school authorities.

No one would contend that a parent has transferred all of his rights as a parent by sending his children to school or that thereby the school authorities have become obligated to assume all the responsibilities of parenthood. The primary responsibility of a parent is to support his minor children. School authorities would surely disclaim this responsibility. It is common knowledge that school authorities will not give medicine to a child unless authorized by the parent and a physician. Also, that in some schools corporal punishment will not be administered to a child without parental consent.[2]

Here, however, it is held that school officials may use their derivative parental

---

2. In Gould v. Christianson, D.C.N.Y., 10 Fed.Cas.No.5,636, p. 857, Blatchf. & H. 507 (1836) where a "boy" before the mast sued the shipmaster for damages for cruel treatment it was contended by the defendant that "in respect to the minor, the master stood emphatically in loco parentis, and was empowered to correct him under the same immunity that a father may correct a child." The Court disagreed saying, "A master of a vessel, under the imputed authority of a parent over crew, or even over mere boys under his charge, cannot claim the exemption or immunity which a father enjoys, to chastise a child at his discretion, without responsibility to the law, by punishments other than such as are cruel and injurious to the life or health of the child or are a public offense. On the contrary, a shipmaster is liable directly to a minor for every personal tort committed upon him without legal justification."

authority and exercise their derivative parental discretion in deciding, not whether a boy should be strapped, suspended or expelled from school but whether he should be deprived of his liberty for a period of years.

Let us examine what the rights of appellant's parents would be had they searched him with the same results as the search by Mr. Hill.

Art. 77, V.T.P.C., defines an accessory as one, knowing that an offense has been committed, conceals the offender, or gives him any other aid to enable him to escape arrest or punishment. Art. 78, id., provides, in part, that the relations of the offender in the ascending or descending line by consanguinity or affinity cannot be accessories.

In Villareal v. State, 78 Tex.Cr.R. 369, 182 S.W. 322, (1916), it was held that a father by concealing the fact that his son had shot and killed a person was not guilty as an accessory to the crime.

It follows that the parents of appellant had they searched him in privacy could have remained silent as to the result of the search without incurring criminal liability. This was a right or privilege which Mr. Hill did not have and which I submit could not be and was not transferred to school authorities under the doctrine of in loco parentis.

The only manner in which these parental rights, conferred by statute, can be preserved is by denying to others imputed authority to exercise them.

How many parents of teenage children would knowingly transfer to school authorities their right and privilege of determining whether evidence incriminating their child should be suppressed or used to deprive him of his freedom for years?

I believe the law to be, as stated above, that school authorities may use such powers of control, restraint and correction over pupils as may be reasonably necessary to enable them to perform their duties and to effect the general purposes of the educational system, and that here their authority ends.[3]

---

3. The record reflects these facts:

"Mr. Hill has a number of students (whose identities remain undisclosed) who provide 'tips' to school officials as to whom may be in possession of marijuana.

Mr. Hill meets with the Austin Police Department on a weekly basis. Particularly with the Special Services Division (narcotics squad).

Mr. Hill maintains lists of suspected marijuana users. In connection with maintaining such lists, Mr. Hill confers with the police agents of the Special Services Division and notifies them of students who might be using drugs.

Mr. Hill considers his powers to investigate possible criminal activity to be virtually unlimited ('the same as the parent'). It is the practice of Mr. Hill to conduct 'shake downs' of large groups of students when he deems it necessary."

These facts make relevant the following comments from respected sources:

"School officials are said to be in loco parentis to each student. Consequently, they may have a duty to each student to advise him of his rights and protect him against over zealous police investi-

gation." Knowles, "Crime Investigation in the School: Its Constitutional Dimensions," 4 J. of Fam.L. 151, 152 (1964).

"The enigmatic nature of the in loco parentis relationship comes into sharp focus when police visit the school and ask the assistance of the school personnel in the questioning and search of the person or effects of a student. Should school personnel protect the student, respecting his right to privacy and the privilege against self incrimination, or is their loyalty to the societal interest in the detection of crime and the protection of the mass of the student body from danger * * *" Suffice it to say that, since Gault (387 U.S. 1, [87 S.Ct. 1428, 18 L.Ed.2d 527]), the emphasis seems to be on guaranteeing the student full access to due process of law pending full disclosure. Anything short of this guarantee may subject the principal and his staff to embarrassing complications at a later date. Thus, in loco parentis may now more clearly mean an obligation to the accused, particularly if the penalty which may be the result of disclosure de-

It was in furtherance of this power that appellant was searched, and proper punishment, suspension or expulsion would also have been pursuant to this power. It was not, however, pursuant to or in furtherance of this power that appellant was deprived of his liberty for a period of years.

The search of appellant was made before his father was called, and, hence, his father could not have consented to the search. I find no evidence that appellant's father consented to admission in evidence the results of the search of his son. Also, I note, the arrest of appellant was made after the search.

Appellant has devoted a considerable portion of his brief to the tortuous history of Overton v. New York, 393 U.S. 85, 89 S.Ct. 252, 21 L.Ed.2d 218, reh. den., 393 U.S. 992, 89 S.Ct. 441, 21 L.Ed.2d 457. I do believe it supports appellant in his views regarding the doctrine of in loco parentis as applied to school authorities which have been adopted by me as shown herein. The confused state of the litigation does not, however, warrant me in detailing its travail here.

I agree with this statement of the law in Ciulla v. State, 434 S.W.2d 948, Tex. Civ.App., Houston (1st), no writ (1968):

"A minor has the same constitutional right to be secure in his person from all unreasonable seizures as has an adult. The 14th Amendment and the Bill of Rights protect minors as well as adults. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, [18 L.Ed.2d 527] (1967); Continental Casualty Co. v. Miller, 135 S.W.2d 501 (Waco Civ.App.1940, n. w. h.)."

I believe that appellant has been deprived of this constitutional right in this case.[4] I would reverse and remand this case with instructions to sustain appellant's motion in limini to suppress evidence obtained as a result of the search of appellant by Mr. Hill.

---

prives him of his liberty * * *" Nolte, Guide to School Law, p. 113 (Parker 1969).

4. That these rights may be asserted in juvenile cases see State in interest of L.B. 99 N.J.Super. 589, 240 A.2d 709, N.J. Juvenile and Domestic Relations Court, Union County (1968) and authorities there cited.