99 N.J. Super. 589 (1968)
240 A.2d 709
THE STATE OF NEW JERSEY IN THE INTEREST OF L.B.
Superior Court of New Jersey, Juvenile and Domestic Relations Court, Union County.
Decided February 29, 1968.
*593 Mr. David J. Hughes, Assistant Prosecutor, for the State (Mr. Leo Kaplowitz, Prosecutor of Union County, attorney).
Mr. Hyman Isaac, assigned attorney, for the juvenile.
KENTZ, J.J. & D.R.C.
A complaint was filled charging the juvenile with the possession of stolen property. The complaint was placed on the Formal Calendar as provided by R.R. 6:9-1 (c), and counsel was assigned to represent the juvenile pursuant to R.R. 6:3-4 (c) and (d). The County Prosecutor was requested to appear and prosecute the complaint in accordance with R.R. 6:3-5. Subsequently, an amended complaint was filed in place of the original complaint and the amended complaint was likewise listed on the Formal Calendar for hearing.
At a preliminary hearing, the defendant moved to (a) dismiss the amended complaint because it was insufficient to charge the juvenile with an offense under N.J.S. 2A:4-14, (b) suppress certain evidence on the ground that it was the product of an unlawful search and seizure in violation of the Fourth Amendment to the Constitution of the United States, and (c) transfer the hearing on the motion to suppress to the Superior or County Court by virtue of R.R. 3:2A-6.
The pertinent facts are as follows. At 4:40 in the morning of July 17, 1967, the juvenile was a passenger in an automobile being driven in the City of Plainfield by an adult in an area restricted because of emergent conditions then existing. The car was halted by members of the Plainfield Police Department and the New Jersey National Guard as it was leaving this restricted, trouble-torn area. The complainant then observed certain contraband in the car and thereupon ordered the juvenile to get out of the vehicle and to lie down on the street with which orders the juvenile complied. The juvenile was then searched and found on his person were two sets of keys allegedly belonging to vehicles *594 parked in a garage and owned by the proprietor of a package goods store in the City of Plainfield.

I
The first question I will consider is whether the amended complaint was sufficient to charge the juvenile with an offense under N.J.S. 2A:4-14.
The amended complaint alleges that:
"That the above named juvenile, under the age of 18 years, is a delinquent child under N.J.S. 2A:4-14 in that on July 17, 1967, at about 4:40 a.m. and while at the intersection of New Street and West 4th Street, located in the City of Plainfield, he was in possession of stolen property, namely two keys belonging to vehicles parked in a garage and owned by Lou's Liquors of 204 Muhlenberg Place, Plainfield. Said property being taken during a riot."
Defendant contended that the State failed to charge the juvenile with an offense because there is no criminal offense for "possession" of stolen property; but rather possession is only an element of the offense of receiving stolen property under N.J.S. 2A:139-1.
R.R. 6:8-1, states in pertinent part that:
"The complaint is a written statement of the essential facts upon which the allegation of delinquent conduct of a juvenile is founded." (Emphasis added).
What constitutes compliance with this Rule has never been expressed by our courts in a reported decision.
In contrast to the above quoted Rule, R.R. 3:2-1 speaks of complaints in criminal proceedings and states in part that "the complaint is a written statement of the essential facts constituting the offense charged". (Emphasis added). The criminal complaint must charge a specific offense while it is only necessary to charge the juvenile with wrongful conduct. From a comparison of these rules it is clear that the complaint in juvenile proceedings need not be drawn with the same exactitude as a criminal complaint. *595 This does not mean, however, that any vague allegation drawn in the form of a juvenile complaint is adequate to charge the juvenile with delinquency. The Supreme Court of the United States in In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), held that juvenile proceedings must be governed by due process of law which includes adequate notice not only of the hearing date but also of the facts constituting the alleged misconduct. It has been the rule in this State that due process of law requires that the defendant, in any case where the possibility of punishment arises, be notified sufficiently of the charges against him so that he may adequately prepare a defense. See: Hewitt v. Hollahan, 56 N.J. Super. 372, 377-378 (App. Div. 1959); Rushin v. Bd. of Child Welfare, 65 N.J. Super. 504, 514-515 (App. Div. 1961); Parsekian v. Cresse, 75 N.J. Super. 405, 411 (App. Div. 1962); State v. Gagliardi, 57 N.J. Super. 238, 242 (App. Div. 1959).
Juveniles in this State are not charged with criminal offenses, rather as stated above, they are charged with delinquent conduct as defined in N.J.S. 2A:4-14. Here the juvenile was charged with possession of stolen property. N.J.S. 2A:139-1 provides, with certain exceptions, that possession of stolen property within one year of the date of its unlawful taking is sufficient evidence to convict for receiving stolen property which is a high misdemeanor. Thus the concept of possession is almost equivalent to that of receiving, and in a juvenile matter such as this, where the defendant cannot be convicted of a crime, the two concepts are virtually synonymous. Surely in terms of due process, the defendant cannot argue that by using the word "possession" instead of "receiving", he was unable to determine what conduct formed the basis of the complaint.
This court is designed to aid the juveniles brought before it, and not to quibble over the niceties of criminal law and procedure. Complaints in this court are rarely drawn by the prosecutor or under the supervision of an attorney but rather by parents, policemen, neighbors, school authorities and other persons interested in the welfare of the child but unfamiliar *596 for the most part with the exact wording of a criminal statute. To require these persons to search through our criminal statutes in order to form a juvenile complaint would not only be foolish in that the juvenile cannot be convicted of a crime, but would be a great disservice both to society and the juvenile as well.
For the above stated reasons, I deny the motion to dismiss the complaint as urged by the defendant.

II
Next I will take up the question of whether a motion to suppress may be made in a juvenile proceeding, and if so, whether such motion should be heard by the juvenile and domestic relations court or whether the hearing should be transferred to another court pursuant to R.R. 3:2A-6 as urged by the juvenile.
A review of the Rules (Part VI) governing this Court discloses no express provision for the making of a motion in a juvenile proceeding to suppress evidence. Nevertheless, there is a constitutional right derived from the Fourth Amendment to the Constitution of the United States that must be safeguarded and preserved for the juvenile. State v. Lowry, 95 N.J. Super. 307, 312-319 (Law Div. 1967); Urbasek v. People, 76 Ill. App.2d 375, 222 N.E.2d 233 (App. Ct. 1966). Cf. In re Gault, supra.; Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); State in the Interest of Carlo, 48 N.J. 224 (1966).
By reason of the foregoing, I conclude that a motion to suppress may be made in a juvenile proceeding.
Having reached this conclusion, where should such a motion be made? Does R.R. 3:2A-6 apply to the juvenile and domestic relations court and require this Court to relinquish its jurisdiction to the Superior or the County Court for the purpose of hearing a suppress motion? The question has never been answered by our appellate courts.
R.R. 3:2A-6 provides in part as follows:
*597 "On notice to the prosecutor of the county in which the penal proceeding is pending or threatened and to the applicant for the warrant, if the search was with a warrant, and pursuant to Rule 3:5-5 and 3:11-1, a person claiming to be aggrieved by an unlawful search and seizure, and having reasonable grounds to believe that the evidence obtained may be used against him in a penal proceeding, may apply only to the Superior Court or County Court for the county in which the evidence was obtained for the return of property seized and to suppress the evidence obtained, even though the offense charged or to be charged may be within the jurisdiction of a municipal court."
In State v. Lowry, supra, the court held that the juvenile was entitled to protection under the Fourth Amendment. With this I fully agree as I have already indicated. The Court in that case also held that the juvenile should make the motion to suppress in the County Court or Superior Court pursuant to R.R. 3:2A-6. As to this latter decision I cannot fully agree.
The Lowry case is distinguishable from the present case. There the juvenile was involved with two adult defendants whereas here there is only a juvenile involved. The Court in Lowry may have been influenced in part by a desire to avoid duplicity in procedure and a possibility of inconsistent decisions.
R.R. 3:2A-6 is found in Part III of the Rules governing the New Jersey Courts. Part III is entitled "Rules Governing Criminal Practice in the Superior Court and County Courts." The scope of these rules is stated in R.R. 3:1-1 which reads as follows:
"These rules govern the practice and procedure in the Superior Court and county courts in all criminal proceedings and, insofar as they are applicable, the practice and procedure on indictable offenses in all other courts except the juvenile and domestic relations courts." (Emphasis added).
The purpose of this part is set forth in R.R. 3:1-2 as follows:
"These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure *598 simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." (Emphasis added).
It is clear that the rules found under Part III are for use only in the two areas stated in R.R. 3:1-1, specifically (1) criminal proceedings in the Superior Court and county courts, and (2) indictable offenses in all other courts except the juvenile and domestic relations court.
It is a well-known rule of construction that where wording is precise and free from ambiguity on its face, there is no need for judicial interpretation, reliance upon extrinsic material, or exercise of discretion. The court must give effect to the plain meaning of the language used. Application of Howard Savings Institution of Newark, 32 N.J. 29, 48 (1960); Meyers v. Cedar Grove Tp., 36 N.J. 51, 61 (1961); Gangemi v. Berry, 25 N.J. 1, 10 (1957); O'Neill v. State Highway Dept., 77 N.J. Super. 262, 270 (App. Div. 1962), reversed on other grounds 40 N.J. 326 (1963); Mangieri v. Spring Tool Co., 68 N.J. Super. 211, 219 (Cty. Ct. 1961).
R.R. 3:1-1 expressly excludes the juvenile and domestic relations court from Part III of the rules. It is impossible to read into this rule another exception which would include the juvenile court in the procedure under Part III without straining and warping the clear meaning of R.R. 3:1-1 and R.R. 3:1-2. Clearly, if the Supreme Court had intended this court to be covered in part by Part III, it would have indicated the possible exception, and certainly it would not have inserted the blanket exclusion found in R.R. 3:1-1.
R.R. 3:2A-6, requires that a motion to suppress be brought before the Superior Court or the County Court "even though the offense charged or to be charged may be within the jurisdiction of a municipal court." It seems to me that if the drafters of this rule intended that such procedure should also apply to the juvenile and domestic relations court they would have also employed some similar language in the rule such as "even though the offense charged or to be charged may be under the jurisdiction of a juvenile and *599 domestic relations court", or by making a direct reference to R.R. 3:2A-6 somewhere in Part VI of the Rules. The drafters of the rule did neither; thus they in no manner gave R.R. 3:2A-6 a status apart from the scope of Part III as stated in R.R. 3:1-1.
In fact, by making an exception only for the municipal court, the exclusion of the juvenile court is even more apparent. It is a rule of construction that where one exception to a general rule is specifically stated all other potential exceptions are impliedly excluded. See: State v. Seng, 89 N.J. Super. 58, 63 (L. Div. 1965), reversed on other grounds 91 N.J. Super. 50 (App. Div. 1966); In re Estate of Posey, 89 N.J. Super. 293, 302 (Cty Ct. 1965).
Furthermore, R.R. 3:2A-6 by its language contemplates application only to an adult criminal proceeding. Provision is made therein to the making of the motion "within 30 days after the initial plea to the charge". (Emphasis added). In a juvenile proceeding there is no provision for a plea as such. This reinforces this court's contention that this rule is not applicable to the juvenile and domestic relations court.
In Lowry, it is stated that the word "penal" as used in R.R. 3:2A-6, is inherently a much broader term than "criminal" as used in R.R. 3:1-1, and that the incarceration of a juvenile is sufficiently penal in nature to bring the juvenile action under the provisions of R.R. 3:2A-6. (95 N.J. Super., at p. 320). While it cannot be denied that "penal" is a broader term than criminal, Marter v. Repp, 80 N.J.L. 530 (Sup. Ct. 1910), affirmed 82 N.J.L. 531 (E. & A. 1911), it seems clear that in view of the scope of Part III of the rules, as stated in R.R. 3:1-1, "penal" as used in R.R. 3:2A-6, is equivalent to "criminal". To interpret an exception here based on the mere use of the word "penal" would do violence to the clearly stated scope of Part III expressed in R.R. 3:1-1.
The Court in Lowry stated that the adoption of R.R. 3:2A-6 in 1962, some 14 years after the adoption of R.R. *600 3:1-1, was further indication that some broader meaning was intended by use of the word "penal" than "criminal" as used in R.R. 3:1-1. It is my opinion that the converse is true. I cannot presume that the drafters of R.R. 3:2A-6 were ignorant of the scope of Part III of the Rules. Rather I must assume that they used "penal" to conform with the scope of that Part as adopted 14 years prior thereto. If R.R. 3:2A-6 had been adopted before the present R.R. 3:1-1 and at a time when the scope of Part III was broader than at present, then I might find some reason to hold that "penal" as used in R.R. 3:2A-6 was based on that earlier scope. However, by adopting R.R. 3:2A-6 at a much later date it would seem that the drafters intended the word "penal" to mean "criminal proceedings and indictable offenses in all other courts".
Moreover, it has long been the rule in this state that juvenile proceedings are rehabilitative and not penal. State in the Interest of Carlo, supra; State v. Horton, 45 N.J. Super. 44 (App. Div. 1957); In re Lewis, 11 N.J. 217 (1953); State v. Monahan, 15 N.J. 34 (1954); In re Smigelski, 30 N.J. 513 (1959); State in re Steenback, 34 N.J. 89 (1961); State v. Tuddles, 38 N.J. 565 (1962). As was stated by Chief Justice Weintraub in his concurring opinion in the Carlo case, supra, "The object of the juvenile process is to make men out of errant boys." (48 N.J., at p. 244).
N.J.S. 2A:4-2, states the purpose of Chapter 4 of Title 2A of the Revised Statutes (Juvenile and Domestic Relations Courts):
"The purpose of this chapter is to secure for each child coming under the jurisdiction of the juvenile and domestic relations court such care, guidance and control, preferably in his own home, as will conduce to the child's welfare and the best interests of the state; and when such child is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given by his parents.
*601 It is hereby declared to be a principle governing the law of this state that children under the jurisdiction of said court are wards of the state, subject to the discipline and entitled to the protection of the state, which may intervene to safeguard them from neglect or injury and to enforce the legal obligations due to them and from them."
As the Court stated in In re Lewis, supra, at page 224,
"* * * the statutory policy for the treatment of juvenile offenders is directed to their rehabilitation for useful citizenship through reformation and education and not to their punishment even when the offense underlying the adjudication of juvenile delinquency is of a kind which when committed by an older person would merit indictment, conviction and punishment." (at p. 224)
The Legislature in enacting Chapter 4 of Title 2A of the Revised Statutes and its predecessors intended the juvenile and domestic relations court to act as parens patriae for the juvenile offender. State in the Interest of Carlo, supra. Any disciplinary measures this Court metes out, including confinement, are for the most part of the same nature and for the same purposes that the child's own parents might impose.
N.J.S. 2A:4-14 gives the juvenile and domestic relations court exclusive jurisdiction over cases involving juvenile delinquency. The statute reads in pertinent part as follows:
"Except as stated in section 2A:4-15 of this title, the juvenile and domestic relations court shall have exclusive jurisdiction to hear and determine all cases of juvenile delinquency.
Juvenile delinquency is hereby defined as the commission by a child under 18 years of age
1) Of any act which when committed by a person of the age of 18 years or over would constitute:
a. A felony, high misdemeanor, misdemeanor, or other offense, or
b. The violation of any penal law or municipal ordinance, or
c. Any act or offense for which he could be prosecuted in the method partaking of the nature of a criminal action or proceeding, or
d. Being a disorderly person, * * *"
*602 The exceptions to this exclusive jurisdiction are stated in N.J.S. 2A:4-15:
"If it shall appear to the satisfaction of the juvenile and domestic relations court that a case of juvenile delinquency as defined in section 2A:4-14 of this title committed by any juvenile of the age of 16 or 17 years, should not be dealt with by the court, either because of the fact that the person is an habitual offender, or has been charged with an offense of a heinous nature, under circumstances which may require the imposition of a sentence rather than the disposition permitted by this chapter for the welfare of society, then the court may refer such case to the county prosecutor of the county wherein the court is situate.
Any juvenile of the age of 16 or 17 years may demand a presentment and trial by jury and, in such case, when this fact is made known to the court, such case, together with all documents pertaining thereto, shall be referred to the county prosecutor.
Cases so referred to the county prosecutor shall thereafter be dealt with in exactly the same manner as a criminal case."
The procedure for carrying out these two exceptions is stated in R.R. 6:9-6 and R.R. 6:9-7.
If the juvenile had requested an indictment and trial by jury, or if this Court has referred the complaint to the criminal court after a preliminary hearing as provided by the above quoted statutes, there is little doubt that Part III of the Rules would govern the disposition of the case. State v. Smith, 32 N.J. 501, 530 (1960). However, neither of these two exceptions is applicable here. Therefore, the juvenile is still under the exclusive jurisdiction of this Court and subject to the rules contained in Part VI, and not those contained in Part III.
The exclusive jurisdiction of this Court is further emphasized by the provisions of R.R. 6:9-8 which requires every criminal court to transfer any complaint against a juvenile under the age of 18 to the juvenile and domestic relations court. The rule reads as follows:
*603 "If during the pendency of any cause in any criminal court it is discovered that the defendant is a juvenile under the age of eighteen years, proceedings shall be halted and all papers shall be transmitted to the juvenile and domestic relations court having jurisdiction, except in cases involving violations of Chapters 3 and 4 of Title 39, Motor Vehicles, of the Revised Statutes, as amended and supplemented, by any juvenile who is a holder of a valid license to operate a motor vehicle of this or any other state. The criminal court which refers the matter shall direct that a new complaint be filed in the juvenile and domestic relations court charging the juvenile with juvenile delinquency."
The exclusive jurisdiction given to the court over juvenile offenders is not the product of a whim of the Legislature, but rather is the result of strong public policy. The historical development and philosophical basis of this exclusive jurisdiction have been well detailed by our Supreme Court in State v. Monahan, supra, so that no repetition is necessary here. However, it may be summarized by saying that the philosophy of the juvenile court law is aimed at rehabilitation through reformation and education in order to restore a delinquent youth to a position of responsible citizenship. The statutory scheme is designed to permit the exercise of the powers of the State as parens patriae for the purpose of rehabilitation and not punishment of youthful offenders. N.J.S. 2A:4-14, giving the juvenile and domestic relations court exclusive jurisdiction over all cases of juvenile delinquency was enacted in furtherance of the strong public policy that juvenile offenders should be accorded separate consideration and treatment, both for their own benefit and for the welfare of society. State v. Tuddles, supra.
Not only is the juvenile court given exclusive jurisdiction over cases of juvenile delinquency but the entire proceedings in that Court are designed to insure the juvenile's privacy and prevent all possible taint of a criminal action on his offense. N.J.S. 2A:4-33 and R.R. 6:8-7 both provide for a minimum of confinement and when detention is necessary there is to be no contact with adult prisoners. R.R. 6:9-1 (a) provides that all hearings shall be conducted in private *604 and the entire proceeding kept confidential, and sub-section (b) of this rule provides that the hearing shall not be conducted as a criminal trial. R.R. 6:2-11 provides that all procedural and social records must be safeguarded from indiscriminate public inspection.
In the Lowry case, it is significant to note that counsel for both adult defendants agreed to have the matter heard in camera in order to protect the right of privacy of the juvenile. R.R. 3:2A-6 provides in part that where material facts are disputed on a motion to suppress, the matter "shall" be heard in open court. Assuming that a litigant has the right to waive a hearing in open court under this Rule, it cannot be presumed that in every case where there is an adult and a juvenile involved in such a motion the adult will waive this right to an open court hearing. Where only a juvenile is involved, to hold that R.R. 3:2A-6 is applicable does by necessity require that the juvenile waive his right to privacy or waive his right to a hearing in open court on the motion to suppress. The capacity of a juvenile to knowingly waive a right is uncertain. See: In re Gault, supra, 387 U.S. pp. 34-36, 87 S.Ct. pp. 1447-1448, 18 L.Ed.2d (pp. 550-554). To place the juvenile in a position where he must choose to waive either one of two rights is unjust, particularly where in the juvenile court he would have the right to a private hearing in a formally convened court.
R.R. 6:1-1 (scope) provides in part:
"These rules may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that strict adherence will work an injustice."
Rule 8 (1) of the Rules of Evidence state that the Judge is to determine questions as to the admissibility of evidence.
It seems from the above quoted rules that this Court does have the power to hear the question of admissibility of evidence which is the product of an alleged unlawful search and seizure unless otherwise provided. Therefore, there should be no reason why a hearing on a motion to suppress *605 such evidence should be transferred to a court of criminal jurisdiction when it can be easily heard in this court. To allow such a transfer would offend the public policy which is the basis of the exclusive jurisdiction of this court. When a juvenile alleges a coerced confession he would be heard here; why then should there be any difference where he alleges an infringement of his rights by an unlawful search and seizure? In re Carlo, supra.
It would seem that a different standard as to the admissibility of evidence would apply to a juvenile court proceeding than that which would apply to an adult criminal trial. In the Gault case the Court said:
"The recommendations in the Children's Bureau's `Standards for Juvenile and Family Courts' are in general accord with our conclusions. They state that testimony should be under oath and that only competent, material and relevant evidence under rules applicable to civil cases should be admitted in evidence." (Emphasis added). 387 U.S., at 56, 87 S.Ct., at 1459, 18 L.Ed.2d, at 562.
In Family Law Quarterly, Vol. 1, Number 4, p. 1, in an article entitled "In Re Gault and the Future of Juvenile Law," the authors, Dorsen and Rezneck, stated at page 19:
"The Court in Gault evidently contemplated that juvenile courts shall have somewhat greater leeway in admitting evidence than adult criminal courts."
While I will not attempt in this opinion to determine the difference between the rules of evidence as applied to the adult criminal court and the juvenile court, nevertheless, the existence of such a difference is another reason why a motion to suppress in a juvenile proceeding should be heard in the juvenile court.
Based on the foregoing, I hold that when a juvenile claims to be aggrieved by an unlawful search and seizure and he is charged with an act of juvenile delinquency that would be an offense under N.J.S. 2A:4-14 (1), he may move to suppress the evidence by a motion before the juvenile and domestic relations court.

*606 III
Turning now to the third question, the issue is whether the police, under the circumstances then existing in Plainfield had probable cause to stop the vehicle in which the juvenile was riding, and then search him. At the hearing on the motion to dismiss, I took judicial notice of the fact that a civil disturbance was in progress on the date alleged in the complaint in the western section of the City. Rule 9 (2) (d) of the Rules of Evidence. The complainant testified that the car in which the juvenile was riding was stopped as it was leaving an area not open to public vehicular traffic because of certain restrictions imposed by reason of then existing emergent conditions.
The civil disturbance was in existence for a number of hours before the vehicle in which the juvenile was riding was stopped. There were fires and sporadic shooting. A number of stores were broken into and looted. A certain area had been cordonned off to prevent trouble-makers from getting in and looters from getting out. Before dawn on the morning in question, the juvenile was stopped as he was leaving the area of trouble. The officer testified that the car was stopped pursuant to a directive from police headquarters that no car was to leave the area.
According to the officer's testimony, the occupants were ordered out of the car. The complainant was on the passenger side of the vehicle next to the door watching the juvenile get out of the car. He looked into the car to see the adult driver getting out of the other side and saw large quantities of boxes of cigars, cartons of cigarettes and bottles of liquor. He then ordered the juvenile to lie down in the street, told him he was being taken into custody and handcuffed him. He then searched the juvenile and discovered two sets of keys belonging to vehicles parked in a garage owned by a local merchant.
The Fourth Amendment to the Constitution of the United States forbids only such searches that are unreasonable *607 under all the factual circumstances then existing. State v. Davis, 50 N.J. 16, 22 (1967); State v. Boykins, 50 N.J. 73, 78 (1967); State v. Miller, 47 N.J. 273 (1966).
Under the facts here presented there should be no need for this Court to go into a lengthy discussion as to what is and what is not reasonable under varying facts and situations. Here the juvenile was leaving a restricted area of Plainfield troubled by a then existing civil disturbance at an hour in the early morning when no juvenile should be on the streets. In view of the looting, reported shootings and in consideration of the marked ability of an automobile for carrying away contraband, it would seem to be unquestionably reasonable for the officer to stop the vehicle, order the juvenile out of the car and take him into custody without process. R.R. 6:8-3; State v. Smith, supra; cf. State v. Kabayama, 98 N.J. Super. 85 (App. Div. 1967).
The discovery of the boxes of cigars, cartons of cigarettes and bottles of liquor at this time would clearly support a reasonable belief that a crime had taken place and that these goods were the product thereof. It would seem that the totality of the circumstances gave rise to probable cause for arrest. State v. Mark, 46 N.J. 262 (1966); State v. Dilley, 49 N.J. 460 (1967). Thus a search of the juvenile was reasonable and in the course of the arrest. State v. Doyle, 42 N.J. 334, 345-346 (1964); State v. Dilley, supra; State v. Scanlon, 84 N.J. Super. 427 (App. Div. 1964). It would follow that the finding of the keys, which form the basis of this complaint, was not done as an unlawful search and seizure, but rather, in the light of all the facts and circumstances then existing, was the result of a reasonable exercise of the police power.
For the above reasons the motion to suppress the evidence on the grounds of an unlawful search and seizure is denied.
An order will be entered embodying the conclusions in this opinion.