109 N.J. Super. 278 (1970)
263 A.2d 150
STATE OF NEW JERSEY, COMPLAINANT-RESPONDENT, IN THE INTEREST OF L.N., JUVENILE APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 24, 1970.
Decided March 12, 1970.
*280 Before Judges KILKENNY, LABRECQUE and LEONARD.
*281 Mr. Stanley C. Van Ness, Public Defender, argued the cause for appellant L.N. (Mr. Richard Newman, Deputy Public Defender, of counsel and on the brief).
Mr. Frederic Shauger, Assistant Prosecutor, argued the cause for respondent (Mr. Leo Kaplowitz, Union County Prosecutor, attorney).
The opinion of the court was delivered by LABRECQUE, J.A.D.
L.N. appeals from an adjudication of delinquency entered in Union County Juvenile and Domestic Relations Court. He received a suspended sentence to the State Home for Boys.
The complaint charged the juvenile defendant, then 15 years of age, with violating N.J.S.A. 2A:4-14 by sniffing Carbona, a cleaning fluid, on April 19, 1968. At the trial it was brought out that when two members of the Union Township Police Department, responding to a call, came upon defendant and a companion, defendant was sitting with his hands cupped between his knees, his head buried in a handkerchief which he was holding. When asked what they were doing, the two boys replied, "nothing." When defendant dropped the handkerchief one of the officers picked it up and found that it gave off an odor which he described as resembling "cleaning fluids or vapors from airplane glue, lacquer thinners, things of that sort." The other officer described the smell as "Carbona or carbon tetrachloride; its a fire extinguisher fluid." The officers observed that defendant's companion had an open pocket in which there was a bottle. On request he turned the bottle over to them. It bore a label indicating that it was Carbona, a cleaning fluid. Detective Mason of the Union County Prosecutor's office, who had studied drug use, testified as to the toxic qualities of the Carbona and its danger to health when inhaled.
Defendant was represented by counsel at the hearing. He denied that he was sniffing the cleaning fluid, stating that he was just wiping "some kind of a spot" off his handkerchief *282 with Carbona he had obtained from the bottle which his companion had. On cross-examination he stated that they had gone down to the store to buy it and that although his companion had bought the Carbona, "I was gonna use it to get somethin' off my pants."
The trial judge filed written findings of fact and conclusions of law. At the time the hearing was concluded the juvenile was already serving a sentence at the State Home for Boys. The basis for his presence there does not appear in the record but we note there was another charge pending against him at the time the present hearing was begun, that of idly roaming the streets on April 7, 1968 in violation of the township's curfew ordinance.
Defendant challenges the adjudication on the grounds that his motions to dismiss were erroneously denied and he was denied due process at the trial. He also challenges the constitutionality of sections (i) and (m) of N.J.S.A. 2A:4-14.
Defendant urged in the court below that in order to justify a finding of juvenile delinquency under N.J.S.A. 2A:4-14 it was necessary that he be found guilty of two of the offenses referred to therein. To the extent here relevant the statute provides as follows:
Juvenile delinquency is hereby defined as the commission by a child under 18 years of age.
(1) of any act which when committed by a person of the age of 18 years or over would constitute:
a. A felony, high misdemeanor, misdemeanor, or other offense, or
b. The violation of any penal law or municipal ordinance, or
c. Any act or offense for which he could be prosecuted in the method partaking of the nature of a criminal action or proceeding, or
d. Being a disorderly person, or (2) of the following acts:
e. Habitual vagrancy, or
f. Incorrigibility, or
g. Immorality, or
h. Knowingly associating with thieves or vicious or immoral persons, or
i. Growing up in idleness or delinquency, or
j. Knowingly visiting gambling places, or patronizing other places or establishments, his admission to which constitutes a violation of law, or
*283 k. Idly roaming the streets at night, or
l. Habitual truancy from school, or
m. Deportment endangering the morals, health or general welfare of said child.
We interpret the statute as containing two sections, the first referring to acts which if committed by an adult would have constituted offenses of the type there set forth, and the second, embracing subsections (e) to (m), inclusive, referring to acts which are generally considered by the community as early steps towards a career of lawbreaking. We hold that a finding that the juvenile has been guilty of any one of the violations referred to in section (2) would support an adjudication of juvenile delinquency. Here the court found that there had been a violation of both subsections (m) and (i).
We are satisfied that defendant's motion for dismissal at the conclusion of the first day's hearing was properly denied. The State had not closed its case but was given leave, to which counsel for the juvenile consented, to call an expert as to the effects of the inhalation of Carbona. Later, at the conclusion of the State's case, the proofs presented a fact question and the motion for dismissal was properly denied.
The testimony of Detective Mason was properly received and considered by the court. The reasons presently urged by defendant in support of his objection to his testimony went to its weight rather than its admissibility. See State in Interest of L.B., 99 N.J. Super. 589, 605 (J. & D.R.C. 1968). Carbona is a well-known cleaning substance and Mason was not required to have made a chemical analysis of it in order to testify that breathing it was dangerous to health. Under subsection (m) it was only necessary to establish that the conduct of the juvenile endangered his health or general welfare. Proof that his health had actually been affected by what the police officers observed on the day in question was not a prerequisite to a finding of guilt. *284 Nor was it necessary to establish the length of time that defendant had been sniffing Carbona.
We likewise find no merit to defendant's contention that the failure to give him adequate notice of the charge against him amounted to a denial of due process. Since it was only necessary to charge the juvenile with wrongful conduct, the complaint need not be drawn with the same exactitude as a criminal complaint. State in Interest of L.B., supra, at 594. As noted, the charge was a violation of N.J.S.A. 2A:4-14. Although there was some colloquy (initiated by defendant's attorney) during the first day of trial with respect to a possible violation of N.J.S.A. 2A:170-25.11, a section of the glue sniffing statute, as affording a basis for a finding of juvenile delinquency, it was made clear to defendant and his attorney on the next trial day that the only charge being pressed was sniffing Carbona, alleged to be a violation of N.J.S.A. 2A:4-14. The motion for dismissal at the close of the case against him was posited upon the asserted lack of any evidence to establish violation of any of the subsections of the statute. We hold that there was substantial evidence in the record to support a finding that he was guilty of violating subsection (m) by engaging in conduct detrimental to his health, morals or general welfare. We need not determine whether the proofs also supported the finding that he was growing up in idleness or delinquency in violation of subsection (i).
Defendant challenges the constitutionality of subsections (i) and (m) of N.J.S.A. 2A:4-14 on the ground of vagueness, both on their face and in their application to him. He has cited no case, and we know of none, in which statutes of this type containing wording similar to that found in subsections (i) and (m) have been held to be unconstitutional as violating due process by reason of vagueness. Statutes setting up juvenile systems of correction have been uniformly upheld. Petition of Morin, 95 N.H. 518, 68 A.2d 668 (Sup. Ct. 1949); Cinque v. Boyd, 99 Conn. 70, 121 *285 A. 678 (Sup. Ct. Err. 1923); State v. Mattiello, 4 Conn. Cir. 55, 225 A.2d 507 (App. Div. 1966), certif. den. 225 A. 2d 201 (1966), cert. granted 391 U.S. 963, 88 S.Ct. 2037, 20 L.Ed.2d 876 (1968), appeal dismissed 395 U.S. 209, 89 S.Ct. 1767, 23 L.Ed.2d 212 (1969); Lindsay v. Lindsay, 257 Ill. 328, 100 N.E. 892, 45 (Sup. Ct. 1913); Com v. Fisher, 213 Pa. 48, 62 A. 198 (Sup. Ct. 1905); United States ex rel. Yonick v. Briggs, 266 F. 434 (W.D. Pa. 1920); Ex Parte Januszewski, 196 F. 123 (S.D. Ohio 1911). Many carried wording closely akin or substantially similar to that of our own statute. Their construction and applicability appear to have posed no difficulty. See Annotations, 45 A.L.R. 1533 (1926) and 85 A.L.R. 1099 (1933).
While conceding that many jurisdictions have upheld the constitutionality of similar statutes in the past, defendant urges that In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), has changed the picture and that such statutes are now open to constitutional doubt and are to be tested by the same rules as are applicable to criminal proceedings. We disagree.
We are satisfied that the Supreme Court did not intend In re Gault to undermine the basic philosophy, idealism and purposes of juvenile courts. Commonwealth v. Johnson, 211 Pa. Super. 62, 234 A.2d 9 (Super. Ct. 1967). The juvenile court proceeding is not the trial of a child charged with a crime but is mercifully designed to save him from such an ordeal in the future. State v. Monahan, 15 N.J. 34, 37 (1954), cert. den. 348 U.S. 889, 75 S.Ct. 210, 99 L.Ed. 698 (1954). It has been said to be designed to make men out of errant boys. State, in the Interest of Carlo, 48 N.J. 224, 244 (1966) (concurring opinion Weintraub, C.J.); State v. Tuddles, 38 N.J. 565, 571-73 (1962). The State as parens patriae has a duty to see to it that a minor does not live a life of delinquency. In re State in Interest of S.I., 68 N.J. Super. 598, 604 (J. & D.R. Ct. 1961). In general, the determination of what activities involve danger *286 that a child will become a hazard to himself or to society rests with the Legislature, and its policies may not be interfered with by us simply because we may disagree with their wisdom. State v. Monahan, supra, at 46.
Beyond this, there is a presumption of constitutionality in favor of a statute and it remains our duty to construe it so as to render it constitutional if it is reasonably susceptible of such interpretation. St. John The Baptist, etc., Church of Perth Amboy v. Gengor, 121 N.J. Eq. 349, 353 (E. & A. 1937); Daly v. Daly, 21 N.J. 599, 604 (1956); Williams v. Smith, 94 N.J. Super. 341, 346 (App. Div. 1967), aff'd. 51 N.J. 161 (1968).
We find nothing in Gault which would justify our setting at naught the Legislature's delineation of conduct on the part of juveniles which, because of its threat to the child's welfare or to society, would constitute juvenile delinquency, by reason of its asserted vagueness. Gault dealt with procedural due process and held that the juvenile was entitled to (1) adequate notice of the charges, (2) the right to counsel, (3) the right to confront and cross-examine witnesses and (4) the right against self-incrimination. None of those rights were denied defendant here.
We find neither State in the Interest of Carlo, supra, at 234-235 nor State in Interest of W.O., 100 N.J. Super. 358 (App. Div. 1968), to be apposite. In the former the juvenile was held entitled to the constitutional safeguard of voluntariness in connection with the use of his alleged confession, while in the latter he was held entitled to the procedural tool of sequestration of witnesses. Likewise, in State in Interest of L.B., supra, it was held that the juvenile court could entertain a motion by the juvenile to suppress evidence allegedly obtained by an unlawful search and seizure. The philosophy of our juvenile court system is aimed at rehabilitation through reformation and education in order to restore a delinquent youth to a position of responsible citizenship. State v. Tuddles, supra, at 571. In the context of that philosophy we hold that subsections (i) and (m) of *287 section (2) of N.J.S.A. 2A:4-14 did not violate due process by reason of their asserted vagueness. We likewise hold that there was no violation of due process in their application to defendant. On the contrary, he was fully and clearly advised as to the specific nature of the action on his part which was alleged to have been in violation of N.J.S.A. 2A:4-14.
Affirmed.